STATE v. WILLIAM GADBERRY.

*Indictment for Murder—Degrees of Murder—Province of Jury—Instructions.*

1. Under the Act of 1893, Sections 1, 2 and 3 of Chapter 85, Acts of 1893, it is made the duty of the jury alone to determine in their verdict whether the crime is murder in the first or second degree; hence,

2. Where, on a trial of one charged with murder, although the defendant introduced no evidence and all the evidence for the State tended to show only murder in the first degree, it was error to instruct the jury that, if they believed the evidence, they should find the defendant guilty of murder in the first degree.

STATE *v.* GADBERRY.

INDICTMENT for murder, tried at Spring Term, 1895, of YADKIN Superior Court, before *Brown, J.,* and a jury. All the evidence for the State tended to show murder in the first degree. The facts, showing the character of the homicide, appear in the opinions of the Court and in the dissenting opinions. There are no exceptions to the evidence.

The court instructed the jury, after reciting all the evidence, that, if they believed the evidence to be true beyond a reasonable doubt, the prisoner was guilty of murder in the first degree. The court explained to the jury the degrees of murder, and also stated that the credibility of the evidence was a question peculiarly for the jury, and that in a case of this importance the jury should exercise great care and weigh the evidence well, and be fully convinced of its truth before convicting.

The defendant was convicted and appealed, assigning as error the instruction of the court that, if the jury believed the evidence, the defendant was guilty of murder in the first degree.

*The Attorney General,* for the State.
*Mr. A. E. Holton,* for the defendant (appellant).

FURCHES, J.: The facts in this case present a very bad tragedy, to use no stronger word. But we have nothing to do with that. This is a Court of appeals upon errors of law appearing in the transcript of record. We do not try the prisoner, but simply pass upon the correctness of the trial below. And, if we shall find error in the trial below, this does not acquit the prisoner, but only sends the case back for another trial.

The State introduced evidence showing the homicide, that defendant was the author of the homicide, and the

attending and surrounding circumstances, and rested the case. The defendant introduced no evidence, and the court charged the jury, if they believed the evidence, the defendant was guilty of murder in the first degree. This charge is the error assigned and complained of by the defendant.

The evidence, as the case comes to us, would have been sufficient to have authorized the court to instruct the jury that if they believed the evidence it would be their duty to find the defendant guilty of murder, prior to the act of the 11th of February, 1893 (Acts 1893, p. 76), and guilty of murder in the second degree under this Act. But this Act created an era in the law of homicide in this State. Before that time we had but one offence of murder, and the penalty for this offence was death. But the Act of 1893 divided murder into two dregrees, first and second degrees. This act continues the death penalty as to the first degree, but makes the penalty for murder in the second degree imprisonment in the penitentiary for not less than 2 and not more than 30 years. It enacts in section 1: "All murders which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed to be murder in the first degree and shall be punished with death." Section 2: "All other kinds of murder shall be deemed murder in the second degree and shall be punished with imprisonment of not less than two, nor more than thirty years in the penitentiary." Section 3: " * * * But the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree."

This statute being of recent date, we have had but few cases before us involving its construction. Many of the states of the Union had preceded us in enacting this and similar statutes, Pennsylvania being the first. She passed a statute, from which ours is taken and very nearly, if not entirely, the same as the Pennsylvania statute of 1794. The fact was called to our attention on the argument both by the Attorney General and Mr. Holton, who argued the case for the defendant. And as the Pennsylvania statute had often been before the Pennsylvania Courts for construction,—which court is recognized as one of the ablest in the Union,—we were recommended by both these attorneys to consult the Pennsylvania reports, and both cited us to Pennsylvania decisions construing their statute.

The Attorney General referred to the case of *Commissioners* v. *Smith*, in 2 Serg. & R., 300, decided in 1816, which seemed to support his contentions ; while, on the other hand, the counsel for the defendant cited *Lane* v. *Commissioners*, 59 Pa. St., 371, delivered in 1868. This case seems to have been thoroughly considered ; and from the fact of the high standing of the Court, as well as the fact that we were referred specially to this Court for aid in construing our statute, which is almost, if not identically, the same as theirs, and from the further fact of the great similarity in the facts and the charge of the court in that case to ours, we are induced to make several quotations from that case. The defendant in that case was indicted for the murder of his wife, and "the commonwealth gave evidence that the deceased died by means of poison, and that it had been administered to her by the prisoner." The court charged the jury, "If your verdict is, 'Guilty of murder,' you must state 'of the first degree'; if 'Not guilty,' you say so, and no more." The jury returned a verdict of murder in the first degree. The prisoner sued out a writ of error,

and the Supreme Court delivered thereon the opinion from which we are quoting. The Court say, in discussing this charge: "Hence, it would seem to be more than ever material that the jury be charged with the responsibility and duty of finding the degree. That it is a material fact to be found is not to be denied or doubted. The statute makes it so, and with it all our decisions accord. But it is argued that, where the facts bring the case within either of the killings declared murder in the first degree, it being the duty of the jury to find a verdict in accordance therewith, a peremptory direction to find that degree is proper and right. To admit this would be to determine that this portion of the verdict is matter of form, and to substitute a court to do that which the law says the jury shall upon their oaths do. * * * Many men have been convicted of murder in the second degree who, really guilty of a higher crime, would have escaped punishment altogether but for the distinction in degrees so carefully committed to juries by the statute." In *Rhodes* v. *Commissioners*, 48 Pa. St., 396, the theory of the prosecution was that the murder was committed by the prisoner in perpetrating the crime of robbery, for the prosecutor's house was robbed that day ; and the prosecution claimed a conviction on that ground ; and the Judge, in his charge to the jury, used almost the same language which the judge did in this case. The language was : "If you find the defendant guilty, your verdict must state, 'Guilty of murder in the first degree, in the manner and form as he stands indicted.' If not guilty, your verdict will simply be, 'Not guilty.' " The same reason was urged in justification of this instruction as was urged here, namely, that the evidence exhibited a case of robbery by the hands of the prisoner, and therefore it must be murder in the first degree, if anything. For so instructing, that court felt constrained to reverse the sentence.

STATE v. GADBERRY.

WOOD, C. J., after noticing the change made by the statute in the common law in respect to degrees in murder, and the duty of the jury under the statute to find the degrees, said : "Yet the Judge assumes the province of the jury, and ascertained the degree in this instance, though this was a conviction by trial, and not by confession. Nothing less can be made out of his words, 'If you find the defendant guilty, your verdict must state 'Guilty of murder in the first degree.' " Was this leaving the degree to the jury to find ? Most clearly not. It excludes all chance of deliberation on the degree, and left to them only the question of guilty or not guilty. It is in vain to argue that the Judge was more competent to fix the degree than the jury, or that the circumstances proved the crime to be murder in the first degree, if murder at all; for the statute is imperative that commits the degree to the jury. It was proper for the Judge to advise them of the distinction between the degrees, to apply the evidence, and to instruct them to which of these degrees it pointed. But to tell them they must find the first degree was to withdraw the point from the jury, and decide it himself.        *        *
*        *        *        *        *        *        The charge being intended to be peremptory,        *        *        *        *        we think it impinged too strongly on the province of the jury. It did not leave them free to deliberate and fix a degree.
        *        *        The Judge decided it, and not the jury.
        *        *        The court always leaving them [the jury], however, free to deliberate upon and the duty and responsibility of finding the degree, if they convict." So, we see that, so far as the case of *Lane* v. *Commissioners* is concerned, it settles this case, if we adopt it as authority. And, while we do not feel bound to do this, we see no reason why we should not. It is construing a statute identical with ours. It is from a Court of high authority,

and appears to have been well considered and well discussed.   We have no opinions of our own to conflict with it.   In fact the principal case we have where this sta'ute is discussed (*State* v. *Fuller*, 114 N. C., 885) so far as it goes, is in harmony with the reas·ning in this Pennsylvania case. The reasoning, to our minds, is so clear and sound, we feel no hesitation in adopting it, which we do, and it disposes of this case.   It fully covers both views of it presented by the Attorney General,—that the court below should be sustained because it appeared the prisoner was in the act of committing another felony, to-wit, the abduction of the deceased at the time the homicide took place, which put the case within the first degree; and, secondly, that the jury would have found the same issue from the evidence if the court had left it to them to determine.   But we see from the reasoning in Lane's Case, *supra*, that neither of these positions can be sustained.   The statute in our State, as it does in Pennsylvania, by express terms confers this duty upon the jury to determine the degree, and it cannot be taken from them by the Court.

There were other views of this case presented by the defendant, but, being so well convinced that the consideration of the construction of the statute determines the case, we have not thought is necessary to enter into a discussion of them.   There is error, and a *venire de novo* is ordered.

AVERY, J. (concurring):   It must be admitted that if the members of this Court were jurors, impaneled to try the prisoner upon the testimony offered in the court below, and considered the witnesses worthy of credit, they would not hesitate to concur in declaring the prisoner guilty of murder in the first degree.   Revolting as his conduct seems to have been, and probably was, if the able Judge who presided had, after learning of the facts from a preliminary

117—52

examination upon a writ of *habeas corpus*, held that the
prisoner was so clearly guilty of murder in the first degree
that he would hear the evidence himself without impanel-
ing a jury, and pronounce the sentence of the law upon
him, the average citizen, regardless of his knowledge of
the forms and technicalities of law, would understand that
the fundamental right of trial by jury, acquired at the cost
of blood and treasure, had been wantonly violated. The
most unlearned and inexperienced of our people know that
the constitution (article 1, § 13) provides that no person
shall be convicted of any crime but by the unanimous ver-
dict of a jury of good and lawful men, in open court. The
legislature, as it was authorized to do, and as every other
legislature which has enacted a statute grading homicides
has done, provided that the "jury before whom the offender
is tried shall determine in their verdict whether the crime
is murder in the first or second degree." The language of,
our statute (*Code*, § 413) is equally explicit in declaring
that "no Judge in giving a charge to the petit jury in a
civil or criminal action shall give an opinion whether a
fact is fully or sufficiently proved, such matter being the
true office and province of the jury, but he shall state in a
plain and correct manner the evidence given in the case
and declare and explain the law arising thereon." The law
provides plainly, first, that the jury have the exclusive right
"to determine in their verdict" the grade of the homicide ;
and, second, prohibits the Judge, in terms quite as unmis-
takable, from telling the jury whether any fact is fully or
sufficiently proved. We have decided (*State* v. *Fuller*,
114 N. C., 885), as has every respectable Court in the United
States where a similar statute has been passed, that, when
it is proved or admitted that the accused killed with a
deadly weapon, the common law raises, if any at all, no
more serious presumption than that the prisoner is guilty

of murder in the second degree, but that it is the province of the jury to say whether they will, from the testimony, draw the inference that the prisoner premeditated the killing. The solution of the question whether the killing was premeditated involves a finding of what was the purpose in a person's breast, to be gathered as an inference from his acts. The law declares that the jury shall determine (upon finding the intent or purpose of the prisoner from the evidence as to his conduct under the definition of murder in the first and second degrees, given them for their guidance by the court) how they will classify the offence. The law limited the authority and duty of the Judge to defining the grades of homicide, and pointing to the evidence relied upon to establish guilt of either. Instead, however, of telling the jury that it was their province to determine under his explanation of the law whether the prisoner, for however short a time, entertained the preconceived purpose to kill, he assumed the authority to decide what the law gave the jury the exclusive right to determine. He told the jury, when the law prohibited his doing so, that the proof was sufficient to make it their duty to return a verdict of guilty of murder in the first degree. If it became necessary for the jury, before fixing the grade, to inquire whether they were warranted in inferring from the evidence that there was a previous purpose to kill, the Judge violated the statute when he told them that a purpose to kill was to be irresistibly inferred, or was fully or sufficiently shown by testimony as to any conduct, however outrageous. If, upon the suggestion of the Attorney General, we attempt to sustain the instruction upon the idea that the evidence tended to show an attempt on the part of the prisoner to abduct the deceased, the same insurmountable difficulty presents itself. We cannot repeal, and the Judge below could not disregard, the plain provis-

ion of law that the jury must fix the grade. In the discharge of that duty it necessarily became their province to inquire and ascertain whether the evidence of the conduct of the prisoner convinced them of his „purpose to abduct. If the language of the Judge is to be construed as meaning that the jury must infer a purpose to abduct,—of the existence of which it was their exclusive province to judge,—then he violated the statute in expressing the opinion that the intent to abduct was fully proved.

No principle is more clearly established than that, where guilt depends upon intent, a special verdict which omits to find the intent is imperfect, and no judgment can be pronounced upon it. If, in this case, the jury had been permitted to return as a special verdict the testimony of the mother of the girl, with all of its revolting details, but had failed to add that they found either that the prisoner had killed in the execution of a premeditated intent, or that his purpose in driving the girl before him was to abduct her, it is settled law that the court could not pronounce judgment. *State* v. *Blue,* 84 N. C., 807; *State* v. *Oakley,* 103 N. C., 408; *State* v. *Curtis,* 71 N. C., 56; *State* v. *Lowry,* 74 N. C., 121. In *State* v. *Bray,* 89 N. C., 480, the Court said: "The special verdict is defective, in that the intent is not found as a fact. There may be evidence of intent, but the fact is not found by the jury. * * * The jury must find the fact from the evidence before them, and the intent is a question for the jury. * * * Whether, if the fact of felonious intent were found in the special verdict, the facts would constitute the offence of larceny, * * * is a question we are not called upon to decide." So, in our case, the Judge would not have invaded the province of the jury, but would have avoided the error into which he has fallen, had he told them that if they should find from the testimony there was either a pre-

STATE v. GADBERRY.

meditated intent on the part of the prisoner to kill, or
that he killed while he was attempting to carry .out a pur-
pose to abduct, they would be warranted in returning a
verdict of guilty of murder in the first degree ; but, if they
were not satisfied as to the existence of either the premedi-
tated purpose to kill or the intent to abduct, and they
believed that he killed with a deadly weapon, then the law
raised  a  presumption  of  guilt  of  murder  in  the  second
degree, and that presumption had not been rebutted, he
would have avoided the error into .which he has fallen.
If a special verdict would be fatally defective because the
jury, in the exercise of their exclusive right, failed to find
the existence of the essential element of intent in abduc-
tion or the preconceived purpose in order to constitute the
highest grade of homicide, then it would seem to follow
inevitably that the Judge has no more right to find the
intent for them before than after they had considered and
passed upon the testimony. If it be true that wherever
the intent is of the essence of the offence, and the jury fail
in a special verdict to state specifically · that there was a
criminal intent, the Judge is not at liberty to supply the
defect before stating the conclusion of the law, surely,
when the jury retain the right to state the verdict in the
shape of a conclusion, he cannot do before what he could
not do after,—assume that the facts proved a guilty intent.

My Brother FURCHES has cited cases exactly in point
from the court of the State where the statute originated,
and in which the opinions rest upon the fundamental prin-
ciples to which I have adverted.   I have ventured to dis-
cuss the question upon the reason of the thing as it would
be presented if no authority could be adduced from abroad.
We are not acting as arbitrators, nor as citizens suscepti-
ble to the influence of the public indignation naturally
aroused by such conduct as is attributed to the prisoner,

but as a Court, supposed to hold the scales of justice too high to be shaken in our purpose by even our own abhorrence of cruelty. To sanction the mistake of a *nisi prius* judge who may have been swept from his moorings by listening to testimony which could scarcely fail to excite disgust, at least, would probably be to endanger the safety of some other prisoner around whom a network of false testimony may be woven, and whose only safety may lie in the discrimination of an intelligent jury of the vicinity. If a trial Judge has the right to draw inferences for the jury, the safeguard thrown around accused persons, as well as parties to civil actions, is destroyed. I concur fully in the conclusion of the Court, and have deemed it wholly unnecessary to add anything to the clear and full discussion of authorities by Justice FURCHES.

CLARK, J. (dissenting): The exact point presented in this case is decided in *State* v. *Gilchrist*, 113 N. C., 673, and *State* v. *Covington*, at this Term, construing the Act of 1893 (chapter 85) "dividing the crime of murder into two degrees." In those cases the Judge charged in almost the very words used by the Judge in this, telling the jury that the prisoner, upon the evidence, was "guilty of murder in the first degree or of nothing." This was approved by unanimous opinions of this Court, and there is nothing in the present case which calls upon the Court to ignore its own decisions to follow the unsettled construction of the Pennsylvania courts upon a somewhat different statute. To the same effect are three decisions upon Chapter 434, Acts 1889, dividing the crime of burglary into two degrees, in which the identical words are used as to the duty of the jury, as in the act dividing the crime of murder, and are construed as in *State* v. *Gilchrist* and *State* v. *Covington*, *supra*. In *State* v. *Fleming*, 107 N. C., 905 (on page 909), the

Court holds that this does not give the jury the discretion to convict of the second degree, but the conviction should be in the first or second degree, according to the evidence; and the court should instruct what degree of burglary a given state of facts would be, if found to be true. This was cited and approved in *State* v. *McKnight*, 111 N. C., 690, in which it is held (opinion by SHEPHERD, C. J.) that the court did not err in refusing to charge that the defendant could be convicted of a lesser grade of burglary than in the first degree if they believed the evidence. In the charge there approved the court intructed the jury that, if certain evidence was believed, they should convict of burglary in the first degree, and, if it was not believed, not to convict of burglary at all. The same authority was cited again in *State* v. *Alston*, 113 N. C., 666, the Court holding that the Judge properly should have instructed the jury as was done in the present case. *Judge Brown*, therefore, followed the uniform decisions of this Court upon an exactly similar statute, which ruling is sustained by the almost uniform decisions of the courts of other States upon similar statutes. There are repeated decisions in our Court, besides those resting upon the presumption from the use of a deadly weapon, approving a charge, "If the jury believe the evidence the defendant is guilty of murder." Among these it is sufficient to refer to *State* v. *Baker*, 63 N. C., 276. His Honor did not instruct the jury to convict, but simply told them that this state of facts, if found beyond a reasonable doubt to be true, would constitute murder in the first degree; just as if he would have gone on, if there had been conflicting evidence, to instruct them that another state of facts, if believed, would have constituted murder in the second degree, and still ano'her, manslaughter. There being but one state of facts in evidence, the court, after "explaining to the jury the degrees of murder, and

that the credibility of the witnesses was peculiarly for the jury, and that in a case of this importance the jury should exercise great care, and weigh the evidence well, and be fully convinced of its truth before conviction," instructed the jury that this state of facts, if fully believed, would make the prisoner guilty of murder in the first degree, and if not believed, the prisoner should be acquitted. The jury found the uncontradicted testimony to be true. If these facts constitute murder in the first degree, his Honor committed no error in telling the jury so. If these facts do not constitute murder in the first degree, then his Honor erred in instructing that they did. There is nothing else in the case.

Now, what is the undisputed and uncontradicted state of facts which the jury have passed upon by their verdict, and found to be the truth. Succinctly stated, it is this: The deceased, according to her mother, about 10 to 12 years old, and, according to the physician, apparently 14, being "well developed," was sister to the prisoner's wife, and had been living with them in Virginia. For some reason she returned home to her parents about last Christmas, and in February last the prisoner appeared at their house, and spent Sunday night. He wished the little girl to fondle his head, and on her refusal struck at her with a razor, and swore he would kill her. He was armed with a pistol, razor, and knife, and, firing off his pistol, swore that the girl should go back to Virginia with him, or he would kill her. On Monday the prisoner stated to the girl's brother, in the woods, that he "intended to make Tessie [the deceased] go off with him or it would go hard with her." On Tuesday the prisoner came back with his pistol and asked if the girl had returned. When she came up she attempted to run, and the prisoner followed her, grabbed her by the arm, and pushed her at arm's length in

STATE *v.* GADBERRY.

front of him, pulling out his pistol, and trying to carry her off. She appealed to her mother, weeping and beseeching her not to let the prisoner carry her off. The mother called the child's father to assist her in preventing the abduction. The father came from the field, to rescue his child, armed with some rocks. The prisoner advanced on him with his drawn pistol, and the father took shelter behind a house. The prisoner thereupon again grabbed Tessie, and in spite of her crying and begging her father, mother, and brother to save her, pushed her along the road in front of him. The mother then commenced shrieking for a neighbor to come to her help, and the prisoner thereupon put his pistol to the child's back, fired, and ran off into the woods. She died therefrom two days later. The prisoner was not drinking.

Such are the facts in this case, which were uncontradicted, and which the jury, under the caution given them by the accomplished Judge who presided at this trial, have found to be true beyond all reasonable doubt. The jury having found the evidence to be true, we cannot throw doubt upon their finding. In this state of facts there is no element of murder in the second degree or of manslaughter which the Judge could have submitted to the jury. The sole question was whether the facts were true or not. If true, a more unprovoked, cold-blooded murder was never committed within the bounds of this State. No Legislature in North Carolina has ever passed an act which they could have intended should be construed as directing that so brutal a slaying of a helpless victim, while calling upon her kindred for help, should be held other than murder in the first degree. The last Act on the subject (1893) provides : "The wilful, deliberate, and premeditated killing, or any killing which shall be committed in the perpetration of or in the

attempt to perpetrate   *   *   *   a felony shall be deemed murder in the first degree."

It is not necessary to dwell upon the Attorney General's second ground,—that the crime, having been committed in an attempt to commit abduction, which is a felony, was necessarily murder. That the prisoner was attempting to take the young girl from the care of her parents for purposes of lust is an inference which the jury might have been justified in drawing, but that the killing was, in the language of the statute, "wilful, deliberate, and premeditated," is not an inference, but the necessary consequence, the very fact itself, which the jury found when they found the above state of facts to be true.

In *State* v. *Norwood*, 115 N. C., 789 (since the Act of 1893), the presiding Judge refused, though requested by written prayers, to submit the phases of murder in the second degree or manslaughter (and they were not even prayed for in the present case), but told the jury that "premeditation did not require any considerable length of time; and if the prisoner, after conceiving the purpose to kill, immediately carried the resolve into execution (there being in that case, as in this, no provocation or heat of passion), malice would be presumed, and the premeditation contemplated by the statute would be shown." This Court, sustaining the charge, said: "If it is shown that the prisoner deliberately determined to take the child's life by putting pins in its mouth, it is immaterial how soon, after resolving to do so, she carried her purpose into execution." In *State* v. *McCormac*, 116 N. C., 1033, the Court again says: "It is not essential that the prosecution, in order to show *prima facie* premeditation and deliberation on the part of a prisoner charged with murder in the first degree, should offer testimony tending to prove a preconceived purpose to kill, formed at a time

STATE *v.* GADBERRY.

anterior to the meeting when it was carried into execution." A *prima facie* case is one which is conclusive unless evidence, from which a different conclusion may be reasonably drawn, appears somewhere in the case.

Aside from the previous threats shown in the present case, the prisoner placed his pistol at the back of a defenseless girl, who was offering no resistance, save her cries for help. There was nothing to show that he acted thus to defend himself from her, nor as in the heat of a contest with an opponent under circumstances which could mitigate the offence to manslaughter or murder in the second degree. He placed his pistol at her back, blew a hole in her, and ran off into the woods. This is not the presumption arising from the use of a deadly weapon, but here the naked facts themselves, unless added to, are susceptible of no other interpretation, when found to be true, than that the killing was "wilful and deliberate," and hence murder in the first degree. If the jury found these facts to be true (as they did), they would not have been warranted in justice in finding the prisoner guilty of murder in the second degree or of manslaughter. As they could not justly have done so, his Honor committed no error in not submitting those phases to them, and in telling them that if this state of facts was, beyond reasonable doubt, the truth of the occurrence, it constituted murder in the first degree.

There are decisions under the Pennsylvania statute which directly sustain the charge of the court below in this case. *Respublica* v. *Mulatto Bob*, 4 Dall., 145 ; *Commissioners* v. *Smith*, 2 Wheeler, Cr. Cas, 79. And there is a Pennsylvania case apparently conflicting with these cases, but which can be readily distinguished. It would be a useless labor, however, to consider and reconcile Pennsylvania decisions,—which are not always reconcilable,—and that

task can best be left to the Court that made them. But one thing is clear beyond all technical and skillfully drawn distinctions, and that is, by our law the wilful, deliberate killing of a human being is still murder in the first degree; and, taking the facts of this case as a jury have found them, the prisoner wilfully, deliberately, without provocation or legal cause to excite his anger against her, placed his pistol at the back of a defenseless girl, whom he was trying to carry away from her home, against her cries for help and the efforts of her father to save her and the shrieks of her mother, and in cold blood shot her to death. This is still murder in North Carolina, and of the kind for which the perpetrators can be hung. These facts can admit of but one inference, and, that being so, his Honor committed no error in telling the jury, if they found beyond all reasonable doubt that such were the facts concerning the killing, they should find the prisoner guilty of murder in the first degree and of no lesser offence.

MONTGOMERY, J. (dissenting): The crime of murder, by the Act of 1893 (Chapter 85), is divided into two degrees. Section 1 provides that: "All murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death." Section 2 makes all other kinds of murder murder in the second degree, punishable by imprisonment. Section 3 declares that : "Nothing herein contained shall be construed to require any alteration or modification of the existing form of indictment for murder, but the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree."

In North Carolina, previous to the enactment of that statute, if a person killed another without any, or upon slight provocation, as for offensive words, for instance, or with an excess of violence out of all proportion to the provocation, the law placed him on the same plane as it did the murderer who had deliberately planned and executed a killing from a long-cherished feeling of revenge, or by waylaying for the purpose of robbery. The rule was that, where the killing was proved, malice was always presumed; and where there was malice the law declared the homicide to be murder, and the punishment death. It was to do away with this forced and artificial conclusion which the law drew of the equal guilt of the man who had committed a homicide on a sudden heat without malice in fact, even though done without provocation, and of the man who had deliberately, wilfully, and premeditatedly planned the killing for revenge or greed. The statute was enacted to afford a more rational rule for the trial and punishment of him who had committed a homicide on the impulse of the moment, and without malice in fact, and not to take from out the common-law rule a killing where, by undisputed testimony, it was proved to have been done under circumstances of threats and preparation and deliberation. It was not intended that it should be left to the jury to determine judicially the effect of such testimony, but that they should, as formerly, pass upon its credibility, leaving it to the court to instruct them as to its legal effect. If, in a case where the crime has been committed since the enactment of the statute, the State should show that the killing was sudden and without provocation, and no more appears, the accused cannot be convicted, as under the old law, of murder in the first degree, but only of murder in the second degree, though a deadly weapon was used. But, if the testimony

is undisputed and uncontradicted and goes to show the killing by any of the means named in Section 1 of the Act, the rules of the common law ought to apply. The Judge ought to instruct the jury that they are to consider thoroughly the credibility of the testimony, and that, if they believe it to be true beyond a reasonable doubt, they should render a verdict of guilty in the first degree. In cases like the one before the Court the language of the Act, which reads, "but the jury before whom the offender is tried shall determine in their verdict whether the crime is murder in the first or second degree," ought not, in my opinion, to be construed to mean more than that the jury shall, under proper instructions from the court upon the character of the testimony, consider it simply in the light of its credibility, and return their verdict as they would do in all other cases where the testimony was undisputed, and where they had received instructions from the court as to the legal bearing and effect of such undisputed testimony, should they find it to be true. This construction is strengthened when it is noticed that the words which declare the duty and power of the jury under this statute stand in direct connection with, and in the same sentence with, that part which treats of the nature and form of the bill of indictment.

Chapter 434 of the Acts of 1889, divides burglary into two degrees, first and second,—the first punishable with death, the second by imprisonment ; and Section 3 of that Act reads as follows : "That when the crime charged in the bill of indictment is burglary in the first degree the jury may render a verdict of guilty of burglary in the second degree if they deem it proper to do so." The last named section seems upon its face to give the jury broader latitude in making up their verdict than is conferred upon them in the Act dividing murder into two degrees. This

Court has passed upon the burglary statute several times, and I believe it has sustained me in the view I have expressed in this opinion.

In *State* v. *Fleming*, 107 N. C., 905, the defendant was indicted for burglary. On the trial the court charged the jury that certain facts testified to amounted in law to a sufficient "breaking" if they believed the evidence; and this Court sustained the charge. It is true, the bill of indictment was, in form, under the common law; but this Court said further in that case: "We do not understand the provision of the statute that on an indictment for burglary in the first degree 'the jury can return a verdict of burglary in the second degree. if they deem it proper so to do' to make such verdict independent of all evidence. The jury are sworn to find the truth of the charge, and the statute does not give them a discretion against the obligation of their oaths."

In *State* v. *McKnight*, 111 N. C., 690, an indictment under the Statute of 1889 for burglary in the first degree, the house broken into was an inhabited dwelling house, and the accused admitted that he had broken into and taken money therefrom. The counsel for the defendant asked the court to instruct the jury that they might convict for a lesser offence than that charged in the bill of indictment, as provided in Section 996 of *The Code*. The instruction was refused and this Court said, in substance, that there was no error in the refusal, for the only question to be determined by the jury was whether it was done in the night time, the prisoner having admitted the breaking and entering and the taking of the money. If it was done in the night time it was burglary in the first degree.

In *State* v. *Alston*, 113 N. C., 666, the defendant was indicted for burglary. The charge of his Honor to the jury

was that, "although all the evidence was that the family was present in the house" at the time the accused was charged to have broken into it, they might find him guilty of burglary in the first degree or guilty in the second degree. This Court said in reference to that charge : "The court should have charged the jury that, if they believed from the evidence that the family was present in the house at the time of the felonious entry as charged, they should convict the defendant of burglary in the first degree. Under such circumstances the jury are not vested with the discretionary power to convict of burglary in the second degree. The power to commute punishment does not reside with the jury." The Court further said, in substance, that it would have been improper for his Honor to have instructed the jury that all the evidence was that the family was in the house at the time of the felonious entry, and that they should find the defendant guilty of burglary in the first degree; that it was only where the jury believed that the family was in the house to be a fact that they could have returned such a verdict. The jury must pass upon the credidility of the evidence.

In the case now before the Court, the accused, on his trial, offered no testimony. That which was offered by the State was undisputed and consistent. The substance of it was that the deceased, who the mother said was about 10 or 12 years old, and the physician who attended her said was about 14, and well developed, was a sister of prisoner's wife, and had lived with them in Virginia a short while—for a part of the year 1894—returning to her home in Yadkin county about Christmas of that year. On Sunday night before the homicide, which occurred the following Tuesday (16th February, 1895), the accused arrived at the home of the deceased, from Virginia, armed with a pistol, a razor and a knife. He insisted that the deceased

should fondle his head, and upon her refusal slashed at her with his razor, and swore he would kill her. He then fired off his pistol, and swore that the deceased had to go to Virginia with him, or he would kill her. She said she did not intend to go. He left that night, but returned on the next day—Monday—and told her brother that "he intended to make Tessie (the deceased) go off with him, or it would go hard with her." On Tuesday he returned, and, seeing the deceased, he drew his pistol. She tried to escape from him, and ran to her mother, but he "grabbed" her, and pushed her up the road. The mother called the father, at work in a field near by, who, upon his coming near, saw the situation and began to gather stones which the accused noticing, he leveled the pistol at the father, and, still holding the child, drove him behind a house on the roadside. The mother crying for the help of neighbors, and the girl begging for help from her brother and father, and imploring them not to let the accused carry her off, the prisoner placed his pistol immediately upon the back of the deceased and fired it, inflicting a wound from which she died two days afterwads. He fled into the woods after he had shot her. He was sober. There was no exception to the testimony, and, as stated before, he offered none. What was there to submit the jury except the credibility of the testimony? The facts, if believed, constituted in law premeditation and malice. The case was well argued by the Attorney General, and by Mr. Holton for the prisoner. The decisions of the Court of Pennsylvania were relied upon by both to help sustain their several views. The Pennsylvania statute is like ours, and was the first of its kind enacted in the States. That Court, in the earlier cases on that statute, put the construction on it which I contend for here. Later decisions of that Court have reversed the former

117—53

ones, and this Court, in the opinion filed in this case, has followed the later Pennsylvania cases, without, I think, giving due weight to our own decided cases in reference to statutes similar in nature to the one under consideration. His Honor instructed the jury, after reciting all the evidence, that, if they believed it to be true beyond a reasonable doubt, the prisoner was guilty of murder in the first degree. This was, in substance, the charge which the Court gave in *State* v. *Gilchrist*, 113 N. C., 673, and which on appeal was approved. I think there was no error in the charge.

No Error.