STATE v. W. LEE HANNER.

(Filed April 24, 1907).

*Special Verdict—Facts—Findings—Sufficiency.*

The findings of a special verdict on an indictment for selling liquor without a license must be ·sufficient for the Court, as a matter of law, to determine the innocence or guilt of the defendant; when the verdict leaves open the inference of innocence or guilt as one of fact, it is defective, and a new trial will be ordered.

CLARK, C. J., concurring.

INDICTMENT for selling liquor without a license, heard before his Honor, *Moore, J.,* and a jury, at the February Term, 1907,·of the Superior Court of DAVIDSON County.

The defendant was indicted in the Court below for selling liquor without a license. The jury returned a special verdict in which they found that the defendant did not have a license to sell liquor. They further find that the testimony of the witnesses is true. James Eastep testified that he applied to the defendant for the purchase of a gallon of whiskey and was told by him that he could let him have a gallon for two dollars, express charges prepaid. The witness paid defendant two dollars, who gave him a receipt, as follows: "Dock Eastep. One gal., $2.00. Paid. W. L. H." When the defendant gave the receipt he said: "If the whiskey don't come, come back up here and I will make it good. Sometimes it gets misplaced." He further said that the witness would get the whiskey the next morning at the express office, as it would be there by that time. The witness went to the ·express office in Lexington the next morning ·and got the one gallon of whiskey. The defendant, when he sold the whiskey, told the witness that it was then in Danville, Va., and was old man Alex Bailey's whiskey, and that witness knew what it was. He also said that he was agent of Bailey

or Bailey Company in Danville; that he would send the order to Danville and, if the order was accepted, the liquor would be sent direct to the witness at Lexington, and that if it did not come "he would make it good or (the witness) would get his money back." The defendant did not go with him to the express office to get the whiskey; it came in the name of the witness and was delivered to him by the express agent at Lexington. It was tagged, and on the tag was written "Dock Eastep, Lexington, N. C." The witness is called Dock Eastep, and may have given that name to the defendant when the liquor was ordered. There was nothing said about the defendant selling the witness any whiskey, but he told him that he was the agent for another concern, and that he would send the order in to them as agent. The tag was on the jug when the witness got it at the express office. D. E. Hepler testified that the defendant told him he represented Alex Bailey, and that the liquor concern was located in Danville, Va., and he was its representative. The card on his office door reads: "Bailey Distilling Company, Danville, Va."

Upon the special verdict the Court was of the opinion that the defendant was guilty, and the jury so found. From the judgment upon the verdict, the defendant appealed.

*Assistant Attorney-General Clement* for the State.
*Walser & Walser, S. E. Williams* and *John A. Barringer* for defendant.

WALKER, J., after stating the case: A special verdict must include all the essential elements of the offense charged, or there can be no conviction, and it follows that if the findings are not responsive to the allegations of the indictment they will not sustain a judgment. The jury must find the facts, and not merely state the evidence which may tend to prove them. There can be no aider of the verdict by intend-

ment, or reference to extrinsic facts appearing in the record, and this is so even though the circumstances stated may be sufficient to warrant an inference or presumption of the existence of the constituent facts not distinctly found. Clementson on Special Verdicts, 291, *et seq.*

It is said by *Chief Justice Ruffin,* for the Court, in *State v. Watts,* 32 N. C., 369: "It is common learning that a verdict is defective which finds only the evidence; since the Court cannot draw inferences of fact, but only apply the law to facts agreed or found. To authorize judgment for the State, therefore, on the verdict, it ought to have contained direct findings of the necessary facts." Hawkins in his Pleas of the Crown, bk. 2, ch. 47, sec. 9, states the rule to be that the Court in adjudging upon a special verdict is confined to the facts expressly found, and cannot supply the want thereof, as to any material part, by any argument or implication from what is expressly found. It was accordingly adjudged in *Rex v. Plummer, Kel.,* 111, and other cases he cites, that where the jury failed to find an essential fact, the Court could not take it as established from the other evidential circumstances of the fact which were expressly found, though they were as full to the purpose as they could well be that the omitted fact existed. And so in *State v. Blue,* 84 N. C., 807, it is said: "In judging upon a special verdict the Court is confined to the facts expressly found, and cannot supply the want thereof, as to any material part, by an argument or implication from what is expressly found. And when the facts are of an equivocal character, which may mean one thing or another, the Court cannot determine as a question of law the guilt or innocence of the defendant. A special verdict is in itself a verdict of guilty or not guilty as the facts found in it do or do not constitute in law the offense charged. There is nothing to do but to write a judgment thereon for or against the accused. There-

fore, in finding a special .verdict the facts should be stated
fully and explicitly, and the omission of any fact necessary
to constitute the offense is fatal," citing 2 Hawkins P. C.,
622. The authorities are all to the effect that the jury must
state the essential facts, and not leave it to the Court to
supply them or any of them or to draw inferences from evi-
dence set forth in the verdict, which must contain the ulti-
mate facts that constitute the offense, and not those merely
which may tend, though never so strongly, to show the de-
fendant's guilt. *State v. Curtis,* 71 N. C., 56; *State v.
Lowry,* 74 N. C., 121; *State v. Bray,* 89 N. C., 480; *State
v. Oakley,* 103 N. C., 408; *State v. Crump,* 104 N. C., 763;
*State v. Finlayson,* 113 N. C., 628. In *State v. Custer,* 65
N. C., 339, *Justice Rodman* tersely states the principle:
"In (passing upon) a special verdict, we are not at liberty to
infer anything not directly found."

The jury in this case have stated in their verdict certain
facts and circumstances, related by the defendant to the
witness, which may tend or not to establish his guilt. But
after all, they are but evidence and not the facts themselves
upon which the law can adjudge guilt or innocence. The
facts recited tend just as much to show that the liquor was
sold, in good faith, to be shipped from Danville, as they do
to prove that the defendant's method of selling was a sub-
terfuge and a mere cover by which to conceal a violation of
the law, or to evade its provisions, in order to escape its
penalty, and certainly it tends to prove the former fact just
as fully as it does the one that the defendant sold the liquor
in Lexington, by himself delivering the jug at the express
office for the defendant, who was to call and get it. What
the defendant said to the witness, James Eastep, was mere
evidence, and not the facts themselves, which the jury should
have found before the Court could proceed to judgment.
This is the fatal defect in the verdict. We would assume a

jurisdiction not possessed by us and be guessing at the true and crucial fact of guilt, if we should direct a conviction upon the present verdict. There is hardly sufficient evidence stated from which to infer that the defendant placed the whiskey in the express office, or had it done, instead of having it shipped from Danville, Va., unless we are permitted, as we are not, to substitute mere conjecture for that certain and reliable proof of a fact which the law requires to establish it.

As said by *Chief Justice Shepherd* in *State v. Finlayson:* "Evidently a very important question concerning· interstate commerce was intended to be presented, but we cannot consider it upon this verdict." Judging from the nature of the findings, the course of the argument here and the briefs of counsel, it was supposed below, we could infer, that the verdict was equivalent to a finding that the whiskey was actually and in good faith sold for shipment from Danville, Va., and the question was whether the transaction was so far interstate traffic as to protect the defendant from prosecution under our law against the unlawful sale of liquors, and also whether the act of ·Congress, sometimes called the Wilson Act, applied to the case. But this matter we cannot consider, as it is not at all presented in the record, owing to the imperfection of the verdict in the respect we have indicated.

Where a special verdict is so defective that the Court cannot pronounce judgment upon it, the rule is to order a new trial. *State v. Wallace,* 25 N. C., 195; *State v. Curtis,* 71 N. C., 56; *State v. Blue,* 84 N. C., 809; *State v. Brittain,* 89 N. C., 481. "If the verdict does not sufficiently ascertain the fact, a *venire facias de novo* ought to issue." 2 Hawkins P. C., p. 622, and note 2. It is of course within the power of the trial Court to direct the jury to retire and further deliberate for the purpose of remedying any defects

in the verdict.   Clementson Special Verdicts, p. 293; *State v. Arthur,* 21 Iowa, 322.

Our conclusion is that there has been no sufficient verdict rendered for the Court to determine, as matter of law, the guilt or innocence of the defendant, and the case stands, therefore, as if there had been a mistrial. *State v. Curtis, supra.* It follows that there was error in entering judgment as upon a conviction, for which there must be another trial.

New Trial.

CLARK, C. J., concurring: In a special verdict the Court is not at liberty to infer anything not found. *State v. Custer,* 65 N. C., 339. The facts found are that the defendant sold a gallon of whiskey and received $2 therefor; that he *said* he would send the order to Danville, Va., and have the whiskey sent out by express, and the purchaser did get the whiskey at the express office next morning. But there is no evidence that he did in fact send the order to Danville, nor that this particular whiskey came by express from Danville addressed to Eastep. The tag on the jug bore Eastep's name, but nothing to indicate that it had come by express from Danville or elsewhere for him. Neither the express agent nor his books were in evidence, and the defendant availed himself of his privilege of not going on the stand, and neither proved the sending of the order nor the shipment of whiskey in pursuance thereof. The jury did not find that these things were done, and the Judge could not draw that inference. If authorized to draw any inference, he might possibly have inferred that the whiskey was already in the express office, or elsewhere in Lexington, and that the gallon jug was merely tagged with defendant's name ready for Eastep next morning. We do not know how this was. If the whiskey was in fact ordered by defendant from Danville, and was in fact shipped thence in a

gallon jug by express addressed to Eastep, no witness went upon the stand to testify to those facts, and the jury has not so found the facts.

If these facts had been found, the question would have been presented whether our statute, making the place of actual delivery to the purchaser the place of sale, would apply to this case. *State v. Patterson,* 134 N. C., 612; *Delamater v. South Dakota,* U. S. Supreme Court, 11 March, 1907. But in the absence of such facts we cannot discuss an abstract proposition of law without facts on which to base the proposition. But it may be noted that even if those facts had been found, there would still arise other questions. The size of the package has been held material. *Austin v. Tennessee,* 135 U. S., 100; *Cook v. Marshall County,* 196 U. S., 261, in which last case *Justice Brewer* says: "It may be shown that the intent of the party concerned was not to select the usual and ordinary mode of transportation, but an unusual and more expensive one, for the express purpose of evading or defying the police laws of the State. If the natural result of such method be to render inoperative laws intended for the protection of the people, it is pertinent to inquire whether the act was not done for that purpose, and to hold that the interstate commerce clause is invoked as a cover for fraudulent dealing, and is no defense to a prosecution under the State law." The State has sole power to regulate or prohibit the sale of liquor. *Barbier v. Connally,* 113 U. S., 31. Was the shipment of one gallon of whiskey by express in a single jug from Danville, Va., to Lexington, N. C., a usual and legitimate act of interstate commerce, or was it merely an attempt to evade a law which the people of this State have enacted under their right of local self-government? If the transaction was merely "a cover for fraudulent dealing, it is no defense to a prosecution under the State law," says the

United States Supreme Court, *supra,* and this view should be submitted to the jury in all similar cases, that they may find how the fact is. In Calvert Regulation of Commerce, 127, the following are among the rules on this point deduced from the decisions of the United States Supreme Court:

"4. The size of the package in which *bona fide* transactions are carried on between the manufacturer and the wholesale dealer residing in different States is a material consideration.

"5. The motive which actuates the particular method of shipment may be determined from several circumstances: (*a*) The trifling value of each parcel. (*b*) The absence of an address on each package. (*c*) The fact that many parcels, for the purpose of the shipment, are aggregated."

The State will not allow its police regulations to be violated under cover of fraudulent shipments from another State, nor will the Federal courts, as the highest Federal Court has said, permit "the interstate commerce clause to be invoked as a cover" for defying or evading the State law. Calvert Regulation of Commerce, 124. Indeed, it is immaterial whether the defendant took orders for liquor to be shipped from a point outside or inside the State, for his act being in violation of the State law which regulates the liquor traffic, neither he nor the carrier is protected by the interstate commerce clause of the Federal Constitution. *Delamater v. South Dakota,* U. S. Supreme Court, 11 March, 1907.

If in this case the whiskey had in fact been shipped from Danville, Va. (though it is not so found), but was already, at the time of the purchase, in the express office, or elsewhere in this State, and was thereafter tagged with purchaser's name, the defendant was guilty, under the Wilson Act. *Pabst Brewing Co. v. Crenshaw,* 198 U. S., 17; *In re Rahrer,* 140 U. S., 545. If whiskey is manufactured in

this State and sent into another in order to be reshipped in retail quantities to consumers here in violation of our police regulation of the sale of liquor on orders taken by the distiller's agent, it is not the subject of interstate commerce. *Crigler v. Commonwealth* (Ky.), 87 S. W., 276.

In view of the enormous business notoriously done in the shipment of liquor into this State by express in jugs, the fact should be found whether such shipment is a *bona fide* exercise of interstate commerce or whether it is an attempt merely to evade the State's regulation of the traffic in intoxicating liquor in the exercise of the police power.