STATE OF NORTH CAROLINA v. ANDREW D. STRICKLAND

No. 32PA82

(Filed 11 January 1983)

### 1. Homicide § 25— first degree murder—four classes

G.S. § 14-17 separates first degree murder into four distinct classes as determined by proof. They are: (1) murder perpetrated by means of poison, lying in wait, imprisonment, starving or torture, (2) murder perpetrated by any other kind of willful, deliberate and premeditated killing, (3) murder committed in the perpetration or attempted perpetration of certain enumerated felonies, (4) murder committed in the perpetration or attempted perpetration of any other felony committed or attempted with the use of a deadly weapon.

### 2. Homicide §§ 25.2, 30— murder perpetrated by poison, lying in wait, imprisonment, starving or torture—presumption of premeditation and deliberation—no instructions on lower grades of murder

When a murder is perpetrated by means of poison, lying in wait, imprisonment, starving or torture, the law conclusively presumes that the murder was committed with premeditation and deliberation, and if the evidence produced at trial supports a finding that the murder was so perpetrated, a defendant can properly be convicted of first degree murder, and there is no justification for submitting to the jury a charge of one of the lower grades of murder.

### 3. Homicide §§ 25.2, 30— homicide perpetrated by any other kind of willful, deliberate and premeditated killing—instruction on second degree murder only if evidence tends to show lack of premeditation and deliberation

Where a homicide is perpetrated by means of any other kind of willful, deliberate and premeditated killing, the second class of first degree murder, upon proof of any of the requisite elements, a defendant can be properly convicted of murder in the first degree. Prior to *State v. Harris*, 290 N.C. 718 (1976), the trial judge was required to give an instruction on second degree murder only if the evidence, reasonably construed, tended to show lack of premeditation and deliberation or would permit a jury to rationally find defendant guilty of the lesser offense and acquit him of the greater. *Harris* mandates a second degree murder instruction in *every case* in which the State relies on premeditation and deliberation to support a conviction of first degree murder. Because the *Harris* rule is not required or supported by precedent; does not manifestly improve the administration or quality of justice; has been emasculated by recent Supreme Court decisions; and is suspect of being constitutionally impermissible, the Court was compelled to overrule *Harris*, and its progeny in favor of the evidentiary approach consistent with the general rule that "the trial court is not required to charge the jury upon the question of defendant's guilt of lesser degrees of the crime charged in the indictment when there is no evidence to sustain a verdict of defendant's guilt of such lesser degrees."

State v. Strickland

**4. Homicide §§ 25.1, 30— felony murder—proof of premeditation and deliberation not required**

Where a murder is committed in the perpetration or attempted perpetration of certain enumerated felonies or the murder is committed in the perpetration or attempted perpetration of any other felony committed or attempted with the use of a deadly weapon, the third and fourth classes of first degree murder, then the State is not required to prove premeditation and deliberation and neither is the court required to submit to the jury second degree murder or manslaughter unless there is evidence to support it.

**5. Homicide § 30— first degree murder prosecution—second murder properly excluded from jury consideration**

Where the evidence in a prosecution for first degree murder tended to disclose a brutal and senseless murder committed without justification or excuse, where there was evidence of preparation in that the victim was bound to facilitate his death, and where to suggest that the murderer did not act with premeditation and deliberation on the evidence as presented was to invite total disregard of the facts, the trial judge properly excluded from jury consideration the possibility of a conviction of second degree murder.

**6. Homicide § 24.2— first degree murder—presumption of malice**

The trial court did not err in failing to require the jury to find malice, an essential element in murder in the first degree, since malice exists as a matter of law whenever there has been an unlawful and intentional homicide without justification or excuse and defendant raised no legal justification or excuse at trial.

**7. Homicide § 24.2— first degree murder—defense of duress—no evidence of lack of malice**

The defense of duress is not available to a defendant charged with first degree murder and therefore is not evidence of lack of malice.

**8. Criminal Law § 7.5— duress—jury instruction—erroneous—favorable to defendant**

The trial judge did not impose a stricter standard on defendant by requiring the jury to find that defendant "was placed in such fear as would deprive him of the ability to act" in order to acquit him on the defense of duress. Although erroneous, the instruction was favorable to defendant in that it did not require the jury to find (1) that the defendant's fear be reasonable or (2) that the defendant was in imminent fear of death or serious bodily harm.

**9. Criminal Law § 7.5— defense of duress—burden of proof**

The burden of proving the affirmative defense of duress to the satisfaction of the jury is upon the defendant; however, the State is required to prove beyond a reasonable doubt all the elements of the offense in the face of any defenses raised and proved to the satisfaction of the jury.

**10. Criminal Law § 7.5— jury instruction on duress—omission of words "because of fear for his own life"—no prejudicial error**

The judge's omission of the words "because of fear for his own life" from his instructions on the defense of duress was not prejudicial error in light of

his summary of the evidence which adequately discussed defendant's alleged fear and in light of the evidence at trial which tended to negate defendant's evidence.

**11. Kidnapping § 1.3— jury instructions—defense of duress to kidnapping charge—prejudicial error**

Where the trial court's instruction to the jury on the defense of duress was such that the Court was unable to determine with certainty whether the jury's rejection of defendant's defense of duress was based upon a disbelief of his evidence or its failure to understand that duress was a complete defense to the kidnapping charge, defendant met his burden of showing that there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial."

**12. Kidnapping § 1.3— element of unlawfulness adequately submitted to the jury**

Where the trial judge used the words "forcibly abducted" in his charge concerning the offense of kidnapping, the element of unlawfulness was adequately submitted to the jury.

**13. Criminal Law § 76.3— admission of defendant's statement for impeachment purposes — no voir dire required**

The trial court did not err in failing to hold a voir dire hearing prior to admitting defendant's statement for impeachment purposes where defendant did not challenge its admissibility, prior to introduction, on the ground that it was coerced.

Justice MARTIN concurring.

Justice MITCHELL joins in this concurring opinion.

Justice MITCHELL concurring.

Justice CARLTON dissenting.

Chief Justice BRANCH joins in this dissenting opinion.

Justice EXUM dissenting.

APPEAL by defendant from *Bailey, J.* Judgments entered 14 May 1971, Criminal Session of Superior Court, CUMBERLAND County. Upon defendant's failure to perfect his appeal, the appeal was dismissed on motion of the State, 13 December 1971. Defendant's subsequent Motion for Appropriate Relief was allowed 1 October 1981, whereby his appeal was reinstated.

Defendant was indicted for first degree murder of James Earl Buckner, first degree rape of Gwen Davis, and kidnapping of Mr. Buckner and Miss Davis. He was found guilty of first degree murder and of two counts of kidnapping. Defendant was sentenced to serve a prison term of ninety-nine years on each of the

kidnapping convictions, to run consecutively and to be followed by imprisonment for the term of his natural life to begin at the expiration of the kidnapping sentences.

As a basis for his appeal, defendant assigns as error the trial court's failure to submit to the jury the issue of defendant's guilt of second degree murder; its failure to require the jury to find that defendant acted with malice in order to convict him of first degree murder; error in the court's instruction on duress as a defense to the kidnapping charges; failure to require the jury to find that defendant acted unlawfully in order to convict him of kidnapping; and the court's denial of defendant's request for a voir dire prior to the admission of an inculpatory statement. For the reasons set out in our opinion, we find no error in defendant's trial sufficient to warrant the granting of a new trial on his conviction of first degree murder. For error in the jury instructions on defendant's defense of duress, defendant is entitled to a new trial on his convictions of kidnapping.

Facts pertinent to our decision in this case are as follows:

David Sisneros testified as a witness for the State that on 28 June 1970, he, in the company of the defendant, Danny Chance, and Charles Wilcosky, decided "to have some fun" after happening upon a black Pontiac automobile occupied by James Earl Buckner and fourteen year-old Gwen Davis. Sisneros and the defendant were soldiers stationed at Fort Bragg. The four men had met together earlier at the Drop Zone Club in Fayetteville, and after drinking for some time, they left in a white station wagon belonging to Chance's wife. They chased some girls in another car "like cat and mouse" in the area of Yadkin Road. Later they were approached by two prostitutes. Sisneros told the defendant to leave the two prostitutes alone, and defendant replied that "they were going to get some tonight and to stay out of his way." The prostitutes left. The men finally targeted the black Pontiac and its occupants.

The defendant, using a gun he had earlier taken from Chance, ordered the two young people to join him and the others in Chance's car. They drove to a secluded area, stopped the car, and defendant instructed Sisneros to remove Buckner and tie him to a tree with a rope provided by Chance. After defendant had intercourse with Miss Davis, he found Buckner tied to a tree and

re-tied him, putting the rope around the young man's neck. Buckner began choking and gagging. In response to Sisneros's warning that defendant might kill Buckner, defendant replied that "it didn't bother him to kill anybody," "that his unit got wiped out in South Viet Nam and that he had killed twenty-three people in Viet Nam." Defendant then proceeded to tie Buckner against the tree "Viet Nam style;" that is "[w]ith his face to the tree, his arms wrapped around the tree . . . and his wrists tied around in that fashion, his legs crossed behind him and the rope wound around his neck and head about three times." He then "took off his shirt and wrapped it around Buckner's neck and started to pull on it, and just more or less hanging on to it, to choke him." At Sisneros's insistence, defendant stopped. Chance was having intercourse with Miss Davis at this time. He was followed by Sisneros, who, upon completing the act, saw Chance and the defendant walking up towards the road from the woods. Wilcosky was now with Miss Davis. Either the defendant or Chance told Sisneros that they had killed Buckner and put him in the bushes. With Wilcosky still in the back seat with Miss Davis, the others got into the front seat and drove the car to a nearby tobacco field. Defendant again had sexual intercourse with Miss Davis. Defendant and Chance "started talking about going two at a time with her;" "they tried, but it didn't work out too well." Miss Davis then got dressed. Defendant stated that they had already killed Buckner. "Now who is going to kill her?" defendant asked, looking at Sisneros. Sisneros "started to grab Miss Davis by the throat," pushed her back and let her go, stating that he couldn't do it. Then the defendant "reached back and hit her in the neck with his finger tips, and she, she coughed, and then he grabbed her by her throat until she passed out." Miss Davis regained consciousness as defendant, accompanied by Sisneros, carried her to a creek where "he was going to dump her in." Defendant dropped her on her head, stating that "he thought her neck was broken." Miss Davis again regained consciousness and defendant attempted to smother her with his hand over her mouth and nose. She stopped moving and defendant "stood up and started to kick her about the head and shoulders." Meanwhile Chance and Wilcosky arrived and asked if Miss Davis was dead yet. Defendant answered in the negative—"[b]ut she won't live very long." Chance then "stomped her neck with his heel, with the heel of his shoes, and while he was going [sic] this, Andrew

Strickland jumped on his back to make more weight . . . ." Miss Davis was then thrown on some boards. She survived.

The four men returned to defendant's home where they stayed for approximately six hours, at which time Chance drove them to Fort Bragg.

Defendant testified on his own behalf. He testified that after meeting with Chance, Wilcosky and Sisneros at the Drop Zone, he left with these men in Chance's car. Chance chased a red Chevrolet with four girls in it. Defendant asked to be taken home. He did not jump out of the car because he feared for his life. Both Chance and Sisneros threatened him with pistols. He took Chance's gun and used it against Buckner and Miss Davis because Sisneros was there behind him with another gun. He tried to help Buckner, and in fact cut him down from the tree. Chance was the last man with Buckner and Buckner was alive the last time the defendant saw him. He tried to help Miss Davis by telling her to run. The others beat the girl while he asked them to stop. Once they had returned to defendant's home, he didn't say anything to his wife because Sisneros still had a gun on him and he was afraid for his wife and family. Defendant's wife testified that at that time she saw Sisneros standing close to the defendant with a gun pointed at him.

On rebuttal, Sisneros denied ever using a gun. He stated that defendant did not attempt to help Mr. Buckner and that defendant was the leader of the operation.

Mr. C. L. Neal, Sheriff of Harnett County, testified that on 30 June 1970, he took a statement from the defendant in the presence of Mr. Gregory. In his statement, the defendant made no mention of being forced at gunpoint to participate in the crimes or of trying to help Mr. Buckner or Miss Davis.

Miss Davis testified that she never saw any pistol in Sisneros's hands; that the defendant never said anything to her about escaping. She further testified that while talking to Mr. Buckner, they were approached by the defendant and three other men; that the defendant pointed a pistol at Buckner and ordered them both to get into a white station wagon; that during the drive, the defendant sexually assaulted her, against her will. Buckner was removed from the car when they arrived at a place

with two small ponds. The men had sexual intercourse with her. She was too afraid to resist. She remembered little about the beating she received except for a hand around her throat. She awoke lying on some white boards in a small ditch. She walked to a farmhouse and was eventually returned home. She was able to lead the sheriff to the area where Mr. Buckner was last seen and Buckner was found dead.

From a description of the white station wagon given to them by Miss Davis, the sheriff's department was able to trace the vehicle to Danny Chance.

Dr. William D. McLester testified concerning the cause of James Earl Buckner's death as follows:

[T]he body was that of a white male, that appeared to be about the age of, that was given me of twenty-three year. Examination of the exterior of his body revealed a ligature mark, or a mark made by some sort of rope or band, around the neck, over the larynx, in that area, and this mark extended over to the right side of the neck, and there was marks depressed about half an inch. Similar mark on the wrist with multiple lacerations or superficial cuts and bruises about the face. There were multiple scratches and bruises of the back, with leaves imbeded in these. Examination of the head showed that the head was blue. There were hemorrhages in his eyes. And there was a bruise of, a large bruise over the, I think it was the right leg.

Internal examination of the deceased revealed that:

On examination of the deeper structure of the neck, there were fresh hemorrhage in the closures, especially of the left side. His lungs were very heavy, about three times normal weight. They were filled with fluid, and on examination there was blood in the lungs. There was blood in the heart and the larger vessels, filled with fluid.

It was Dr. McLester's opinion that James Earl Buckner "died of strangulation or asphyxiation due to a ligature, the mark which [he had] described around the neck."

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

[1]  Defendant first assigns as error the trial court's failure to instruct the jury on a charge of second degree murder. He quotes the following language appearing in our opinion of *State v. Harris*, 290 N.C. 718, 730, 228 S.E. 2d 424, 432 (1976):

> [I]n all cases in which the State relies upon premeditation and deliberation to support a conviction of murder in the first degree, the trial court must submit to the jury an issue of murder in the second degree.

It is defendant's contention that the rule enunciated in *Harris* merely reaffirmed our prior ruling in *State v. Perry*, 209 N.C. 604, 184 S.E. 545 (1936), and that the rule has since been reaffirmed in *State v. Keller*, 297 N.C. 674, 256 S.E. 2d 710 (1979), and *State v. Poole*, 298 N.C. 254, 258 S.E. 2d 339 (1979). We disagree with the defendant that *Perry*, like *Harris*, mandates a second degree murder instruction in *every case* in which the State relies on premeditation and deliberation to support a conviction of first degree murder. We are further compelled to re-evaluate our decision in *Harris* in light of the recent Supreme Court decision in *Hopper v. Evans*, --- U.S. ---, 72 L.Ed. 2d 367 (1982).

We note initially that defendant was tried and convicted in December 1971, prior to our 1976 decision in *Harris*. Thus our first inquiry is directed toward an interpretation of the law in the pre-*Harris* cases, applicable to defendant on the date of his trial. As defendant further invokes the benefit of our subsequent interpretation and refinement of the law of these cases as set out in *Harris*, our inquiry must necessarily turn to a discussion of the "*Harris* rule" as affected by the interpretation we now place on those cases purportedly giving rise to the rule. *See State v. Perry*, 209 N.C. 604, 184 S.E. 545; *State v. Newsome*, 195 N.C. 552, 143 S.E. 187 (1928); *State v. Spivey*, 151 N.C. 676, 65 S.E. 995 (1909).

[1]   Important to this interpretation is the language found in G.S. § 14-17, which defines murder in the first degree. While kidnapping was not a specified felony under the statute as it appeared in 1971, the present version of the statute is substantially the same and provides in pertinent part:

> A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree, . . . .

We read G.S. § 14-17 as separating first degree murder into four distinct classes as determined by the proof. The four classes are as follows:

I Murder perpetrated by means of poison, lying in wait, imprisonment, starving or torture;

II Murder perpetrated by any other kind of willful, deliberate and premeditated killing;

III Murder committed in the perpetration or attempted perpetration of certain enumerated felonies;

IV Murder committed in the perpetration or attempted perpetration of any other felony committed or attempted with the use of a deadly weapon.

*See State v. Davis*, 305 N.C. 400, 290 S.E. 2d 574 (1982), for a history of the Statute.

I

[2]   Where the homicide is perpetrated by means of poison, lying in wait, imprisonment, starving or torture, all of which require planning or purpose, the law conclusively presumes that the murder was committed with premeditation and deliberation, and where the evidence produced at trial supports a finding that the murder was so perpetrated, a defendant can properly be convicted of first degree murder. *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Hendrick*, 232 N.C. 447, 61 S.E. 2d 349

(1950); *State v. Dunheen,* 224 N.C. 738, 32 S.E. 2d 322 (1944). *See Barfield v. Harris,* 540 F. Supp. 451, 468 (E.D.N.C. 1982). This Court has consistently held that under these circumstances the trial court is not required to instruct the jury on second degree murder. *State v. Perry,* 209 N.C. 604, 184 S.E. 545; *State v. Newsome,* 195 N.C. 552, 143 S.E. 187; *State v. Spivey,* 151 N.C. 676, 65 S.E. 995. We regard this particular aspect of the statute and cases construing it as significant to our determination of the issue before us, for it serves to place the issue of the trial judge's duty to instruct on a lesser offense within the context of an evidentiary determination rather than requiring such an instruction as a matter of law in every case. When the evidence presumptively supports a finding of premeditation and deliberation as in the case of murder by poison, lying in wait, imprisonment, starving or torture, there is no justification for submitting to the jury a charge on one of the lower grades of murder. As we stated in *Spivey,* "[i]t becomes the duty of the trial judge to determine, in the first instance, if there is any evidence or if any inference can be fairly deduced therefrom, tending to prove one of the lower grades of murder." 151 N.C. at 686, 65 S.E. at 999. The test, therefore, in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict defendant of the lesser crime,[1] but whether the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged. *See* 4 N.C. Index 3d, Criminal Law, § 115.

---

1. Murder in the first degree is sometimes defined briefly as murder in the second degree plus premeditation. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970). If a person is guilty of murder in the first degree, *a fortiori,* his guilt encompasses murder in the second degree. Manslaughter is a lesser included offense of murder in the second degree. *State v. Holcomb,* 295 N.C. 608, 247 S.E. 2d 888 (1978). However, the mere fact that the evidence might support a verdict on the lesser crimes does not dictate that the trial judge instruct on the lesser grades. His decision rests on whether the evidence is sufficient to support the charge; that is, whether, in a murder case, the evidence raises a question with respect to premeditation and deliberation or malice, either under the facts or as raised by defendant's defenses. *See State v. Brown,* 300 N.C. 731, 268 S.E. 2d 201 (1980); *State v. Smith,* 294 N.C. 365, 241 S.E. 2d 674 (1978); *State v. Jones,* 291 N.C. 681, 231 S.E. 2d 252 (1977); *State v. Stewart,* 292 N.C. 219, 232 S.E. 2d 443 (1977); *State v. Redfern,* 291 N.C. 319, 230 S.E. 2d 152 (1976).

It is an elementary rule of law that a trial judge is required to declare and explain the law arising on the evidence and to instruct according to the evidence. *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393. " 'The trial court is not required to charge the jury upon the question of the defendant's guilt of lesser degrees of the crime charged in the indictment when there is no evidence to sustain a verdict of defendant's guilt of such lesser degrees' . . . ." *State v. Shaw*, 305 N.C. 327, 342, 289 S.E. 2d 325, 333 (1982).

Hence, by recognizing the important connection between what the evidence must show in determining what instructions must be given, the omission of an instruction on second degree murder in cases involving poison, lying in wait, etc., is entirely proper and consistent with our many decisions regarding the trial judge's duty to limit his instructions in accordance with the evidence presented.

## II

[3]   Where a homicide is perpetrated by means of any other kind of willful, deliberate and premeditated killing, upon proof of the requisite elements, a defendant can be properly convicted of murder in the first degree. We find the following to be an accurate statement of the law respecting the State's burden of proof on the elements of premeditation and deliberation and the trial court's duty to submit the question to the jury:

> Deliberation and premeditation, if relied upon by the State, as constituting the homicide murder in the first degree, under the statute, must always be proved by the evidence, beyond a reasonable doubt. In such case, under the statute as construed by this Court, it is for the jury and not the judge to find the fact of deliberation and premeditation, from the evidence, and beyond a reasonable doubt. Premeditation and deliberation are always matters of fact to be determined by the jury, and not matters of law to be determined by the judge.

*State v. Newsome*, 195 N.C. at 564, 143 S.E. at 193.

We do not, however, read this language as requiring, as a matter of law, that an instruction on second degree murder is mandated in every case merely because the jury must determine

the existence of premeditation and deliberation in order to convict defendant of first degree murder. Neither *Spivey, Newsome,* nor *Perry* so holds. The test in *Spivey* is whether there is evidence which would support a verdict of murder in the second degree.

> If, however, there is any evidence or if any inference can be fairly deduced therefrom, tending to show one of the lower grades of murder, it is then the duty of the trial judge, under appropriate instructions, to submit that view to the jury.

*State v. Spivey,* 151 N.C. at 686, 65 S.E. at 999.

Likewise, in *Newsome* the following language indicates that the decision to instruct on the lesser grade of murder is an evidentiary one:

> When on the trial of a criminal prosecution it is permissible under the bill, as here, to convict the defendant of 'a less degree of the same crime' (C.S., 4640), and *there is evidence tending to support a milder verdict,* the case presents a situation where the defendant is entitled to have the different views presented to the jury, under a proper charge,
> . . . .

*State v. Newsome,* 195 N.C. at 566, 143 S.E. at 194 (emphasis added). (Stacy, C.J., concurring in result.)

And in *Perry* we again find that although the jury must ultimately determine the existence of every element of first degree murder, it is the trial judge, upon his consideration of the evidence, who must determine whether to submit an instruction on a lesser grade of murder.

> Whenever there is any evidence or when any inference can be fairly deduced therefrom tending to show a lower grade of murder, it is the duty of the trial judge, under appropriate instructions, to submit that view to the jury.

*State v. Perry,* 209 N.C. at 606, 184 S.E. at 546.

Should the trial judge find, for example, that defendant's own evidence affirmatively negates the possibility that he did not intend to kill the victim, an instruction on the offense of an unintentional killing is not warranted. *See Hopper v. Evans,* --- U.S. ---,

72 L.Ed. 2d 367. To require an instruction on the lesser grade of murder under these circumstances, or where there is not "a scintilla of evidence to support the lesser verdicts" would invite jurors "to disregard their oaths and convict a defendant of a lesser offense when the evidence warranted a conviction of first degree murder, inevitably leading to arbitrary results." *Roberts v. Louisiana,* 428 U.S. 325, 334-35, 49 L.Ed. 2d 974, 982 (1976).

As our own Court stated in *State v. Lampkins,* 286 N.C. 497, 504, 212 S.E. 2d 106, 110 (1975), *cert. denied* 428 U.S. 909 (1976):

[5]   When, upon all the evidence, the jury could reasonably find the defendant committed the offense charged in the indictment, but could not reasonably find that (1) he did not commit the offense charged in the indictment and (2) he did commit a lesser offense included therein, it is not error to restrict the jury to a verdict of guilty of the offense charged in the indictment or a verdict of not guilty, thus withholding from their consideration a verdict of guilty of a lesser included offense. Under such circumstances, to instruct the jury that it may find the defendant guilty of a lesser offense included within that charged in the indictment is to invite a compromise verdict whereby the defendant would be found guilty of an offense, which he did not commit, for the sole reason that some of the jurors believe him guilty of the greater offense.

We further note that the language of the United States Supreme Court in *Beck v. Alabama,* 447 U.S. 625, 634, 65 L.Ed. 2d 392, 401 (1980), supports our position that lesser offense instructions should not be given indiscriminately or automatically, but only when warranted by the evidence: "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve doubts in favor of conviction." The availability of a third option, that of finding the defendant guilty of a lesser offense, thus reduces the risk of an unwarranted conviction. However, due process requires only that a lesser offense instruction be given "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Id.* at 635, 65 L.Ed. 2d at 401.

We therefore hold that prior to our decision in *Harris*, the trial judge was required to give an instruction on second degree murder only if the evidence, reasonably construed, tended to show lack of premeditation and deliberation or would permit a jury to rationally find defendant guilty of the lesser offense and acquit him of the greater. Due process requires no more. Our pre-*Harris* case law supports such a holding, as does the law of other jurisdictions.[2]

Even so, this Court in *State v. Harris*, 290 N.C. 718, 228 S.E. 2d 424, appeared to convert a rule requiring the presence of evidence into a more inflexible rule *requiring* as a matter of law a second degree murder instruction *in every case* in which the State relied on premeditation and deliberation. It did so by omitting from consideration the following underlined evidentiary language appearing in *Perry*:

In those cases where the evidence establishes that the killing was with a deadly weapon the presumption goes no further than that the homicide was murder in the second degree, and if the State seeks a conviction of murder in the first degree it has the burden of proving beyond a reasonable doubt that the homicide was committed with deliberation and premeditation. Under such circumstances it is error for the trial judge to fail to submit to the jury the theory of murder in the second degree, since it is the province of the jury to determine if the homicide be murder in the first or in the second degree, that is, whether they, the jury, are satisfied beyond a reasonable doubt, from the evidence, that the homicide was committed with deliberation and premeditation. *Whenever there is any evidence or when any inference can be fairly deduced therefrom tending to show a lower grade of murder,*

---

2. In *State v. Vickers*, 129 Ariz. 506, 633 P. 2d 315 (1981), the court rejected defendant's contention that he was entitled to an instruction on second degree murder, finding that the evidence supported only a premeditated and deliberate killing because defendant had to have "reflected" while tearing bedsheets to form a garrote with which to strangle the victim. In *Justus v. Commonwealth*, 222 Va. 677, 283 S.E. 2d 905 (1981), *cert. denied* 71 L.Ed. 2d 693 (1982), it was held that the only real issue before the jury was whether defendant was guilty of capital murder or of first degree murder and that because there was insufficient evidence to support a second degree murder instruction (the evidence must amount to more than a scintilla) the omission was not error.

*it is the duty of the trial judge, under appropriate instruc-
tions, to submit that view to the jury.*

209 N.C. at 606, 184 S.E. at 546. (Emphasis added.)

The import of the *Harris* decision was to require a trial judge
to instruct on the lesser offense *without regard to what the
evidence supported.* As Justice Huskins admonished in his dissent
in *State v. Poole*, 298 N.C. at 259-60, 258 S.E. 2d at 343, the *Har-
ris* rule and its subsequent affirmation in *State v. Keller*, 297 N.C.
674, 256 S.E. 2d 710,

perpetuate[d] an unnecessary refinement in the law.

Submission of a lesser included offense when there is no
evidence to support the milder verdict is not required when
the indictment charges felony murder, arson, burglary, rob-
bery, rape, larceny, felonious assault, or any other felony
whatsoever. In all such cases if the evidence tends to show
that the crime charged in the indictment was committed and
there is no evidence tending to show commission of a crime
of lesser degree, the court correctly refuses to charge on un-
supported lesser degrees. The *presence* of evidence tending
to show commission of a crime of lesser degree is the deter-
minative factor.

(Citations omitted.)

As if to address this perception, the Supreme Court of the
United States, in *Hopper v. Evans*, --- U.S. ---, 72 L.Ed. 2d 367,
illustrated the vulnerability of an inflexible *Harris*-type rule and
raised serious doubts as to whether the rule is constitutionally
permissible. In *Hopper*, the defendant had signed a detailed writ-
ten confession admitting that he had shot the victim in the back
during the course of a robbery. He again confessed in detail
before a grand jury to the effect that the victim was not the only
person he had ever killed, "that he felt no remorse because of
that murder, that he would kill again in similar circumstances,
and that he intended to return to a life of crime if he was ever
freed." *Id.* at 370. At his trial, the defendant testified on his own
behalf, admitting his intent to commit the murder and once again
stating that he would return to a life of crime if acquitted.

Hopper was tried prior to the Supreme Court's decision in
*Beck v. Alabama*, 447 U.S. 625, 65 L.Ed. 2d 392, under an

State v. Strickland

Alabama law which precluded a jury hearing a capital case from considering lesser included offenses and which was invalidated in *Beck*. The Supreme Court held that the defendant was not prejudiced by the Alabama preclusion law because his own evidence negated the possibility that a lesser included offense instruction on a non-capital unintentional killing might have been warranted. Stating that the Court of Appeals for the Fifth Circuit had "misread" *Beck* in awarding defendant a new trial, the Supreme Court explained that:

> [O]ur holding [in *Beck*] was that the jury must be permitted to consider a verdict of guilt of a non-capital offense "in every case" in which "the evidence would have supported such a verdict."

*Id*. at ---, 72 L.Ed. 2d at 372-73.

The Court, in *Hopper*, further stated that "an instruction on a lesser offense in this case would have been impermissible absent evidence supporting a conviction of a lesser offense," relying on its analysis in *Roberts v. Louisiana*, 428 U.S. 325, 49 L.Ed. 2d 974. A plurality opinion in *Roberts* had held that to allow every jury in a capital murder case to return a verdict of guilty of the non-capital crimes of second degree murder and manslaughter was "impermissible" when the evidence warranted only a conviction of first degree murder.

Because the *Harris* rule is not required or supported by precedent;[3] does not manifestly improve the administration or

---

3. We take note of the conclusion of the dissenting opinion that "the doctrine of *stare decisis* must be dead in this jurisdiction," because this majority opinion "refuses to acknowledge the clear holdings of pre-*Harris* decisions of this Court." On the contrary it is the dissent which misinterprets the pre-*Harris* decisions of this Court. Ironically, on this issue it appears that history is repeating itself. In *State v. Gadberry*, 117 N.C. 811, 23 S.E. 477 (1895), a majority of the Court with Avery, J., concurring and Clark, J., and Montgomery, J., dissenting, adopted the position and reasoning as expressed in *Harris* and its progeny and now argued for so vehemently by the dissent in the case *sub judice. Gadberry* was decided shortly after the act of 1893 had divided murder into first and second degrees. In that case, the facts tended to show that the deceased was defendant's sister-in-law and was a girl of twelve or fourteen years. She had been living with the defendant and his wife in Virginia and had come home to visit her parents for Christmas. Armed with a razor, a knife, and a pistol, the defendant had earlier threatened to kill the girl if she refused to return to Virginia with him. In the presence of the girl's parents, the defendant, on the day of the shooting, accosted the girl and forced her to accom-

quality of justice; has been emasculated by *Hopper*; and is suspect of being constitutionally impermissible, we are compelled to over-

pany him, pushing her forward as he walked behind her with the gun at her back. The mother screamed for help "and the prisoner thereupon put the pistol to the child's back, fired, and ran off into the woods." The trial judge instructed the jury that if they believed the evidence to be true beyond a reasonable doubt, defendant was guilty of murder in the first degree.

In language more appropriate for quoting by the dissent in the case *sub judice*, the Court in *Gadberry* wrote:

> It is in vain to argue that the Judge was more competent to fix the degree than the jury, or that the circumstances proved the crime to be murder in the first degree, if murder at all; for the statute is imperative that commits the degree to the jury.

*Id.* at 816, 23 S.E. at 478.

The Court found error in the trial court's failure to instruct on second degree murder.

In his dissenting opinion, Justice Clark argued strenuously for the position that this Court adopts today, stating, "[i]n this state of facts there is no element of murder in the second degree or of manslaughter which the Judge could have submitted to the jury. The sole question was whether the facts were true or not." *Id.* at 825, 23 S.E. at 481-82. "If these facts constitute murder in the first degree, his Honor committed no error in telling the jury so." *Id.* at 824, 23 S.E. at 481.

Justice Montgomery, analogizing to first degree burglary cases, added that a jury cannot be permitted to reach a verdict independent of all evidence, and that " '[t]he power to commute punishment does not reside with the jury.' " *Id.* at 832, 23 S.E. at 484.

It is interesting to note that Justice Avery, who concurred in *Gadberry*, wrote the majority opinion in *State v. Covington*, 117 N.C. 834, 23 S.E. 337 (1895), the case immediately following *Gadberry* in the North Carolina Reports. In *Covington*, the Court found no error in the trial court's first degree murder charge to the jury, stating that "[t]he charge is correct if there is no evidence of murder in the second degree or of manslaughter." *Id.* at 860, 23 S.E. at 351. The State had presented a witness who testified that the defendant had confessed to him. The defendant's own words, as spoken to the witness, "signif(ied) a purpose deliberately and premeditately formed in the mind, immediately followed by an act to execute it,— the purpose to shoot the deceased, and the aiming and shooting to carry out the purpose." *Id.* at 861, 23 S.E. at 352. The Court commented further that

> [t]he confession in this case is not simply an admission of the homicide; for the prisoner not only admits the act of killing with a deadly weapon, but gives a full and detailed account of the manner and the purpose with which it was done. Accepting the account as true, it is impossible to perceive any theory upon which the question of murder in the second degree could have been submitted to the jury . . . . Where the testimony upon which he relies to establish a homicide with a deadly weapon, in order to raise a presumption of murder in the second degree, not only proves such homicide but has the

rule *Harris*, and its progeny in favor of the evidentiary approach consistent with our general rule that "the trial court is not required to charge the jury upon the question of defendant's guilt of lesser degrees of the crime charged in the indictment when there is no evidence to sustain a verdict of defendant's guilt of such lesser degrees." Strong's North Carolina Index, Criminal Law § 115 (3d ed.) and cases cited thereunder.

Admittedly, a charge of first degree murder carries with it the possibility of a sentence of death and must therefore be, and is, subject to additional safeguards. *See e.g.*, G.S. § 15A-2000 (Cum. Supp. 1981). We do not, however, consider the seriousness of the potential sentence as sufficient justification for requiring a judge to instruct on a lesser offense of second degree murder, or for permitting a jury to disregard the evidence and arbitrarily find a defendant guilty of a lesser offense, when there is no evidence to support such an instruction by the court or finding by the jury.

## III and IV

[4] A murder committed in the perpetration or attempted perpetration of a felony, as enumerated under the statute, shall be deemed murder in the first degree. This Court has held that "[u]nder G.S. 14-17 premeditation and deliberation are not elements of the crime of felony murder." *State v. Wall*, 304 N.C.

tendency to prove murder in the first degree, and under no inference fairly deducible therefrom is the prisoner guilty of murder in the second degree or manslaughter, the court should instruct the jury that it is their duty to render a verdict of guilty or not guilty . . . . (The statute) does not give jurors (sic) a discretion, when rendering their verdict, to determine of what degree of murder a prisoner is guilty. They must render a verdict according to the evidence, and believing a prisoner guilty beyond a reasonable doubt of murder in the first degree, it is their duty so to find . . . .

*Id.* at 863-64, 23 S.E. at 352.

The language and the holding in *Covington* appear to be in direct conflict with the Court's earlier decision in *Gadberry*. In fact, in *State v. Spivey*, 151 N.C. 676, 65 S.E. 995 (1909), which the dissent maintains supports its position, the Court cited *Covington* with approval. Concerning *Gadberry*, the Court wrote, "[w]e do not think that case, upon the evidence, well decided. There was no evidence upon which the judge below could have predicated a charge of murder in the second degree or manslaughter, nor was there any evidence from which the jury could have fairly deduced the crime of murder in the second degree or manslaughter." *Id.* at 685, 65 S.E. at 999. Thus, *Gadberry* was overruled.

609, 613, 286 S.E. 2d 68, 71 (1982). Moreover, "when the law and evidence justify the use of the felony-murder rule, then the State is not required to prove premeditation and deliberation, and neither is the Court required to submit to the jury second degree murder or manslaughter unless there is evidence to support it." *Id.* It has been further held that the State is not required, prior to trial, to declare whether it will prosecute a first degree murder indictment under a theory of premeditation and deliberation or felony murder. Thus a "murder indictment and a separate indictment charging the accompanying felony, joined for trial, set out sufficient factual information to enable defendant to understand the basis of the state's cases against him." *State v. Silhan*, 302 N.C. 223, 235, 275 S.E. 2d 450, 462 (1981). Nor is it necessary for the State to elect at the close of the evidence which theory of first degree murder to submit to the jury when the evidence is sufficient to establish a prima facie case as to both theories. *Id.* And, in *State v. Norwood*, 303 N.C. 473, 279 S.E. 2d 550 (1981), we rejected the argument that the theories of premeditation and deliberation and felony murder were inconsistent. "A murder may be committed after premeditation and deliberation *and* during the perpetration or attempt to perpetrate a felony. The theories involve different elements, but in no way are they inconsistent." *Id.* at 480, 279 S.E. 2d at 554. An interrelationship between the felony and the homicide is a prerequisite to the application of the felony murder doctrine. *State v. Bush*, 289 N.C. 159, 221 S.E. 2d 333, *death sentence vacated* 429 U.S. 809 (1976).

[5] Turning now to the facts of the present case, we must determine whether the evidence, as considered by the trial judge at the time of the trial, justified his decision to omit an instruction on second degree murder. Of some significance to our determination is the fact that this defendant was indicted for first degree murder as well as rape and kidnapping, two underlying felonies which could have supported a theory of felony murder. In fact, the circumstances surrounding the murder suggest the conclusion that the murder was committed in the perpetration of a felony as well as with premeditation and deliberation. A jury could surmise that the decision to render the murder victim helpless was to facilitate the sexual assaults on Miss Davis. The evidence was sufficient to establish a prima facie case as to first degree murder on the theory of premeditation and deliberation or felony murder,

and the State would have been fully justified in submitting either or both theories to the jury. Had the State relied on the felony-murder theory as well as on a theory of premeditation and deliberation, an instruction on second degree murder would not have been required. *See State v. Wall*, 304 N.C. 609, 286 S.E. 2d 68. In *Wall* the defendant was found guilty of murder in the first degree on the theory of felony murder, but was found not guilty of first degree murder on the theory of premeditation and deliberation. This Court held that the defendant was not prejudiced by the court's failure to charge on involuntary manslaughter.

We emphasize again that although it is for the jury to determine, from the evidence, whether a killing was done with premeditation and deliberation, the mere possibility of a negative finding does not, in every case, assume that defendant could be guilty of a lesser offense. Where the evidence belies anything other than a premeditated and deliberate killing, a jury's failure to find all the elements to support a verdict of guilty of first degree murder must inevitably lead to the conclusion that the jury disbelieved the State's evidence and that defendant is not guilty. The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is *no* evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder.

The record before us discloses a brutal and senseless murder committed without justification or excuse. There was evidence of preparation—the victim was bound to facilitate his death. As with any victim of strangulation, death came slowly. To suggest that the murderer did not act with premeditation and deliberation, on the evidence as presented, if believed, is to invite total disregard of the facts.

Defendant's own position on this issue further illustrates the need for a reevaluation of the *Harris* rule by placing the issue within the context of a rule of evidence, rather than a rule of law. Arguing in his brief that under the *Harris* rule, he was entitled to

an instruction on second degree murder as a matter of law, defendant states that the court's failure to so instruct resulted in prejudice *per se*. He does not argue, nor even suggest, in his brief, that he was *in fact* prejudiced by the absence of a second degree murder instruction. He offers no argument that had the alleged error not been committed, a different result would have been reached at his trial; that is, that the jury would have acquitted him of first degree murder and found him guilty of second degree murder. *See* G.S. § 15A-1443(a).

**[6]** Defendant assigns as error the trial court's failure to require the jury to find malice, an essential element of murder in the first degree. The trial judge instructed as follows:

First degree murder is the unlawful killing of a human being with malice and with premeditation and deliberation.

For you to find the defendant guilty of murder in the first degree, there are five things that the State must prove: First that the defendant, Andrew Strickland, intentionally, with a rope, strangled James Earl Buckner, that the rope used in this manner was a deadly weapon, and you will consider the manner in which it was used, the nature of the rope and the size and strength of the Defendant Andrew Strickland to that of the victim, Mr. Buckner.

Second, that the death of James Earl Buckner was a natural and probable result of defendant's act.

The act need not have been the only cause nor the last or the nearest cause; it is sufficient if it concurred with some other cause, acting at the same time, which in combination with it, caused the death of James Earl Buckner. Third, you must find that the defendant Strickland intended to kill James Earl Buckner. Fourth, you must find that the defendant acted with premeditation—that is, that he had formed the intent to kill James Earl Buckner over some period of time, however short this period of time may have been, before he put the rope around his neck and tightened it and strangled him. And finally, you must find that the defendant acted with deliberation, which means that the intent to kill was formed while he was in a cool state of mind and not while under the influence of a suddenly aroused or violent passion.

Malice exists as a matter of law whenever there has been an unlawful and intentional homicide without justification or excuse. *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969). The elements of malice and unlawfulness are implied in an intentional killing with a deadly weapon. *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert. denied* (82-5353) (1982); *State v. Davis*, 305 N.C. 400, 290 S.E. 2d 574. This Court has held that the State is not required to prove malice and unlawfulness unless there is some evidence of their nonexistence. *Id.* As noted above, the trial judge instructed the jury that in order to find the defendant guilty of murder in the first degree, they had to find that the killing was committed by the intentional use of a deadly weapon. The rope burns around the victim's neck, coupled with the fact that there were hemorrhages in his eyes and his lungs were filled with fluid, indicated that Mr. Buckner died of strangulation. The rope used to strangle the victim may be considered as a deadly weapon. "A deadly weapon is not one which must kill but one which under the circumstances of its use is likely to cause death or great bodily harm." *State v. Strickland*, 290 N.C. 169, 178, 225 S.E. 2d 531, 538 (1976). Except for his plea of duress, which is not a defense to murder, defendant raised no legal justification or excuse at trial. Thus, the presumption of malice arose.

[7] Defendant further contends, however, that his defense of duress, although not a defense to first degree murder, nevertheless raises evidence of lack of malice. In *State v. Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982), this Court rejected a similar argument, holding that the defense of duress was not available to a defendant charged with first degree murder and he was therefore not denied his constitutional right to trial by jury upon failure of the trial court to instruct that the presumptions of malice and unlawfulness could be rebutted. Defendant's evidence that another committed all the acts in perpetration of the murder or that defendant participated under duress "did not raise any issues of self-defense or heat of passion upon sudden provocation." *Id.* at 543, 290 S.E. 2d at 574. We further note that the trial judge instructed generally on the defense of duress as negating the element of intent. He did not limit this instruction to the kidnapping or rape charges. Thus, the defendant received the benefit of a duress defense to the murder charge, although erroneously, and was, in fact, provided with the very instruction he now argues he was entitled to.

Defendant next assigns as error the trial judge's instructions to the jury on his defense of duress. He argues that the instruction did not direct the jury to consider coercion on the kidnapping charges; that it erroneously required the jury to find that he be "placed in such fear as would deprive him of the ability to do a willful act;" that it improperly placed the burden of persuasion on the defendant; and that it limited the defense to a fear for his family's safety.

The trial judge first summarized the evidence, including a full statement of defendant's evidence concerning his defense of duress, in part as follows:

That Chance chased a red Chevrolet with four girls in it and followed them for sometime; then they started back and that he, Strickland, asked them to take him home, that he didn't want to have anything to do with it. That he did not jump out because he feared for his life. That they came on towards Fayetteville and that Chance stopped him from jumping out by putting a pistol on him. That Sisneros also put a pistol on him, which was a twenty-five automatic pistol. That he told them to leave the prostitutes alone, but Chance refused and said they were going to get some tonight and to stay out of his way.

That they went on then to where Buckner and the Davis girl were. That Strickland took Chance's twenty-two and and (sic) put the gun on them, but that he did so because Sisneros was right behind him pointing a twenty-two or a twenty-five automatic at his back.

Then all went back to the car and they went to Mr. Strickland's home, arriving there about five or five-thirty; that it was not quite daylight. That Strickland's wife opened the door and Sisneros and Wilcosky went in and Danny Chance told them to watch Strickland. That he didn't say anything to his wife about this because Sisneros had a gun on him. That he feared for his wife and that they had made threats about his wife and family.

Following his summary of the evidence, the judge then instructed on the law of kidnapping, first degree murder and first degree rape. He then instructed as follows:

Ladies and Gentlemen, the defendant in this case contends and says that he acted out of fear for the safety of his wife and family. If you find from the evidence, to your satisfaction, that he was placed in such fear as would deprive him of the ability to do a wilful act, that he acted fully under compulsion and fear; then you would not find the element of intent to exist.

As noted earlier, by so concluding his instructions with this statement on the law of duress, the trial judge allowed the jury to consider the duress defense not only as to the kidnapping and rape charges, but also (and erroneously) as a defense to the first degree murder charge. Therefore, the fact that the instruction appeared at the conclusion of the judge's statements of the law, rather than following the charge as to the law of kidnapping was in this respect favorable to the defendant.

[8] We disagree with the defendant that the trial court imposed upon him a stricter standard in requiring the jury to find "that he was placed in such fear as would deprive him of the ability to do a wilful act" in order to acquit him on the defense of duress. No act done "fully under the compulsion of fear" could be a willful act under this instruction. The jury was required to find that the defendant did not act voluntarily (willfully), but rather in response to coercion based on fear. The instruction, though erroneous, was favorable to the defendant inasmuch as the instruction did not require the jury to find (1) that the defendant's fear be reasonable or (2) that the defendant was in imminent fear of death or serious bodily harm. *See State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976).

[9] We find no merit to defendant's contention that the instruction on duress improperly placed the burden of persuasion on the defendant. Like the defense of insanity, duress is an affirmative defense "with the laboring oar cast upon the defendant." *State v. Golden*, 203 N.C. 440, 441, 166 S.E. 311, 312 (1932). The burden of proving an affirmative defense to the satisfaction of the jury is upon the defendant in a criminal trial. We have so held in numerous cases in which the defendant has raised the defense of insanity and so hold now where the defense raised is that of duress. *See State v. Ward*, 301 N.C. 469, 272 S.E. 2d 84 (1980); *State v. Clark*, 301 N.C. 176, 270 S.E. 2d 425 (1980); *State v.*

*Franks*, 300 N.C. 1, 265 S.E. 2d 177 (1980); *State v. Leonard*, 296 N.C. 58, 248 S.E. 2d 853 (1978); *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976). Nor does placing the burden on a defendant under these circumstances relieve the State of its burden to prove beyond a reasonable doubt each and every element of the crime charged. *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595. We do not agree with defendant's interpretation of the following language in *State v. Sherian*, 234 N.C. 30, 34, 65 S.E. 2d 331, 333 (1951), which he argues requires the State to rebut coercion beyond a reasonable doubt:

> The defendants were entitled to have the court instruct the jury to the effect that if, upon a consideration of all the evidence, it failed to find beyond a reasonable doubt, that the assistance rendered to James Diggs, after he committed the felonious assault upon officer Howell, was rendered with the willful and felonious intent to aid Diggs to escape arrest and punishment, and not under compulsion or through fear of death or great bodily harm, it should return a verdict of not guilty.

We read this language only to require that the State prove beyond a reasonable doubt all the elements of the offense in the face of any defenses raised and proved to the satisfaction of the jury. Our decision on this issue is supported by the language in *Patterson v. New York*, 432 U.S. 197, 210, 53 L.Ed. 2d 281, 292 (1977):

> [6] We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion

such a rule in this case and apply it to the statutory defense at issue here.

[10] Finally under this assignment of error the defendant contends that he did not receive the full benefit of an instruction on his defense of duress due to the omission of the words "because of fear for his own life." In his summary of the evidence, the trial judge had fully and adequately discussed the defendant's alleged fear for his own life. Evidence at trial tended to negate this aspect of the defendant's evidence: he did not raise the question of his fear in a statement given to the sheriff's department; Miss Davis testified that the defendant never attempted to help her and that she never saw a gun in Sisneros's hand; Sisneros testified that the defendant was the only one with a gun. In light of the evidence before the jury and the generally favorable nature of the duress instruction, in addition to the trial judge's summary of defendant's evidence, the omission of the words "because of fear for his own life" cannot be viewed of such significance *so as to warrant the granting of a new trial to this* defendant, if we assume that the jury simply disbelieved defendant's version of the events that transpired.

[11] The instruction on duress, as given, is not one to which we give our approval. Although defendant's arguments are fragmentary, we are unable to satisfy ourselves that the jury was sufficiently apprised of the legal implications attaching to the defense. The trial judge, in this regard, merely stated that upon believing defendant's evidence on duress, the jury "would not find the element of intent to exist." Defendant sets forth the following suggested instruction, which we agree would have been more appropriate:

> There is evidence in this case tending to show that the defendant took part in the kidnapping only because he was threatened with death. The defendant would not be guilty of kidnapping if his actions were caused by a reasonable fear that he would suffer immediate death or serious bodily injury if he did not so act. His assertion that he acted only because of threats of death is in denial that he committed any crime.

We cannot, with certainty, determine whether the jury's rejection of defendant's defense of duress was based upon a disbelief of his evidence or its failure to understand that duress was a complete

defense to the kidnapping charge. Had the jury understood that duress, if proven, would be a complete defense to the kidnapping charges, the result might reasonably have been different. Thus, we conclude, defendant has met his burden of showing that there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." G.S. § 15A-1443(a). Defendant is therefore entitled to a new trial on the kidnapping charges.

[12] Because it may recur upon retrial of the kidnapping charges, we address defendant's contention that the trial court erred in failing to require the jury to find that he acted "unlawfully" in order to convict him of kidnapping. The trial judge instructed that:

> Kidnaping by definition means the *unlawful taking* and carrying away of a person by force and against his or her will, or the unlawful seizure and detention of a person by force and against her will. That is not to say that the person must be grabbed and physically pulled. It is sufficient force if the force used is enough to put a person in fear of his life or bodily harm unless he complies with the demands of this would-be kidnaper.

> Therefore, as to the bill of indictment charging the defendant with the crime of kidnaping James Earl Buckner, I charge you that if you find from the evidence and beyond a reasonable doubt, the burden being upon the State of North Carolina to so convince you, that on the 28th or early morning of the 29th of June, 1970, the defendant Andrew Strickland, by the use of a gun, forcibly *abducted* James Earl Buckner and removed him from the place where he was to some other place, forcibly and against his will, I say if you find those things from the evidence beyond a reasonable doubt, it will be your duty to find the Defendant Strickland guilty of kidnaping James Earl Buckner, as charged in the bill of indictment.

(Emphasis added.)

As noted by the defendant, the word "unlawful" does not appear in the second portion of the instruction. The trial court did,

however, require that the jury find that Mr. Buckner was "forcibly abducted." "Abduct" is defined by Webster's New World Dictionary, 2d ed. 2 as "1. to take (a person) away unlawfully and by force as fraud; kidnap." The word abduct includes the element of unlawfulness required to be found by the jury. Absent a request for special instructions, it was unnecessary for the trial judge to explain or define a word of common usage such as "abduct." *State v. Jones*, 300 N.C. 363, 266 S.E. 2d 586 (1980). The judge instructed similarly on the kidnapping charge respecting Miss Davis. We therefore hold that under both instructions, the element of unlawfulness was adequately submitted to the jury.

[13]  As his final argument, the defendant contends that the trial court erred in failing to hold a voir dire hearing prior to admitting his statement into evidence for impeachment purposes. Defendant had taken the stand and testified on his own behalf. His testimony was inconsistent in several respects with the statement he made to Sheriff Neal. The statement was read into evidence for impeachment purposes. The defendant made a general objection, requested a voir dire, but did not at any time during trial allege that the statement was the result of coercion or was otherwise involuntary. Judge Bailey relied on *Harris v. New York*, 401 U.S. 222, 28 L.Ed. 2d 1 (1971), in denying defendant's request. This Court, in interpreting *Harris* on an issue substantially similar to the one here raised, stated in *State v. Richardson*, 295 N.C. 309, 326-27, 245 S.E. 2d 754, 765 (1978):

> When a confession is used on rebuttal for impeachment purposes and a defendant *specifically challenges the admissibility of the confession on the ground that it was coerced or 'induced by improper means,'* a voir dire hearing must be held for the purpose of determining whether the trustworthiness of the confession satisfies this State's legal standards. If not satisfied that the confession was made under circumstances rendering it trustworthy, *i.e.*, not produced by coercion or induced by other improper means, the trial court should bar use of the confession for any purpose.
>
> In the present case the record does not indicate that defendant objected to the impeaching use of his statements and drawings on the ground they were coerced or otherwise induced by improper means. Defendant did not request a voir

dire hearing to determine whether the statements and draw-
ings were coerced. Neither defendant's testimony nor any
other evidence suggests that the statements and drawings
were coerced or induced by force, threat, fear or promise of
reward. *Cf. State v. Byrd,* 35 N.C. App. 42, 240 S.E. 2d 494
(1978); *State v. Langley,* 25 N.C. App. 298, 212 S.E. 2d 687
(1975). Under such circumstances it was altogether proper for
the trial court to overrule defendant's general objection to
the use of the challenged evidence for impeachment purposes
without conducting further voir dire hearings.

We hold, as did this Court in *Richardson,* that the trial court was
not required to hold a voir dire hearing prior to the introduction
of defendant's statement in rebuttal upon failure of the defendant
to challenge its admissibility on the ground that it was coerced.

For error in the charge on the kidnapping convictions, de-
fendant is entitled to a new trial.

We find no prejudicial error in defendant's conviction of
murder in the first degree. Because defendant's life sentence on
the murder conviction was to begin at the expiration of the kid-
napping sentences, the judgment on the murder conviction must
be set aside and the cause remanded for formal entry of a new
judgment by a judge of Superior Court, Cumberland County,
without the necessity of a hearing or the presence of the defend-
ant. *State v. Whaley,* 262 N.C. 536, 138 S.E. 2d 138 (1964); *State v.
Sutton,* 244 N.C. 679, 94 S.E. 2d 797 (1956).

Nos. 70CRS19799 and 70CRS19800 (kidnapping)—New trial.

No. 70CRS19801 (murder)—Remanded for entry of judgment.

Justice MARTIN concurring.

I concur and join in the well-reasoned, deliberative opinion of
the majority. This concurring opinion is filed to emphasize some
of the issues discussed.

*First.* The decisions relied upon by this Court in *Harris* do
not support the proposition that as a matter of law murder in the
second degree must be submitted to the jury in all murder cases
in which premeditation and deliberation are elements of the

capital charge. Each of the cases, *Spivey, Newsome,* and *Perry,* were decided on whether there was evidence to support a verdict of murder in the second degree. None establishes a rule of law that requires the lesser charge to be submitted in all cases regardless of the evidence. Thus, *Harris* is not supported by precedent.

*Second.* Our decision today requires murder cases to be treated as all other criminal cases in determining whether a lesser included offense should be submitted to the jury. Proof of premeditation and deliberation does not require any special, mystical procedure. It can be proved as any other condition or state of the mind; it may be shown by such just and reasonable deductions from the acts and facts proven as the guarded judgment of a reasonably cautious and prudent person would ordinarily draw therefrom. It may be proved by the facts and circumstances known to the party charged and may be evidenced by the acts and declarations of the party and all other relevant circumstances. *State v. Love,* 296 N.C. 194, 250 S.E. 2d 220 (1978); *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970); *State v. Walters,* 275 N.C. 615, 170 S.E. 2d 484 (1969); *State v. Ferguson,* 261 N.C. 558, 135 S.E. 2d 626 (1964). There is nothing about murder cases involving premeditation and deliberation that justifies a special rule of law governing the submission of lesser included offenses.

*Third.* Today's decision does not abandon the trial judges of the state upon an uncharted sea. Trial judges will return to the evidentiary test they applied before *Harris* in determining whether to submit murder in the second degree and other lesser offenses. Under the *Harris* rule trial judges had to apply two standards with respect to lesser included offenses—the mandatory rule of law with respect to murder in the second degree and the evidentiary rule with respect to manslaughter and involuntary manslaughter. Now the evidentiary test will govern the submission of all lesser included offenses. Trial judges are skilled in making this determination; it is their daily diet.

*Fourth.* Certainly the application of the law to the facts in this case in determining whether to submit murder in the second degree is not a holding that every strangulation killing is murder in the first degree. Each case must be analyzed on its facts to

State v. Strickland

determine whether murder in the second degree should be submitted. I cannot add to the careful analysis of the majority opinion in determining whether there was evidence to support a verdict of murder in the second degree.

*Fifth.* The *Harris* rule is constitutionally suspect. Under it, a jury may return a verdict of guilty of murder in the second degree, even though all the evidence shows premeditation and deliberation. The jury is thereby given discretion to return such a verdict, which may be arbitrarily exercised regardless of the evidence. Such a rule is unconstitutional under the eighth and fourteenth amendments to the United States Constitution.

In *Hopper v. Evans*, --- U.S. ---, ---, 72 L.Ed. 2d 367, 373 (1982), we find:

> Our holding in *Beck* [*v. Alabama*, 447 U.S. 625, 65 L.Ed. 2d 392 (1980)], like our other Eighth Amendment decisions in the past decade, was concerned with insuring that sentencing discretion in capital cases is channelled so that arbitrary and capricious results are avoided. See, e.g., *Roberts v. Louisiana*, 428 U.S. 325, 334, 49 L.Ed. 2d 974, 96 S.Ct. 3001 (1976) . . . .
>
> In *Roberts v. Louisiana*, supra, the Court considered a Louisiana statute which was the obverse of the Alabama preclusion clause. In Louisiana, prior to *Roberts*, every jury in a capital murder case was permitted to return a verdict of guilty of the non-capital crimes of second-degree murder and manslaughter, "even if there [was] not a scintilla of evidence to support the lesser verdicts." Id., at 334, 49 L.Ed. 2d 974, 96 S.Ct. 3001 (plurality opinion). Such a practice was impermissible, a plurality of the Court concluded, because it invited the jurors to disregard their oaths and convict a defendant of a lesser offense when the evidence warranted a conviction of first-degree murder, inevitably leading to arbitrary results. Id., at 335, 49 L.Ed. 2d 974, 96 S.Ct. 3001 (plurality opinion). The analysis in *Roberts* thus suggests that an instruction on a lesser offense in this case would have been impermissible absent evidence supporting a conviction of a lesser offense.
>
> *Beck* held that due process requires that a lesser included offense instruction be given when the evidence warrants

such an instruction. But due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus channelled so that it may convict a defendant of any crime fairly supported by the evidence.

It is difficult to distinguish the rule in *Harris* from the statute in *Roberts v. Louisiana.*

In conclusion, I agree with the statement of Justice Huskins in *State v. Poole*, 298 N.C. 254, 258 S.E. 2d 339 (1979):

On further reflection, however, I am convinced that *Harris* and *Keller* perpetuate an unnecessary refinement in the law.

Submission of a lesser included offense when there is no evidence to support the milder verdict is not required when the indictment charges felony murder, arson, burglary, robbery, rape, larceny, felonious assault, or any other felony whatsoever. In all such cases if the evidence tends to show that the crime charged in the indictment was committed and there is no evidence tending to show commission of a crime of lesser degree, the court correctly refuses to charge on unsupported lesser degrees. The *presence* of evidence tending to show commission of a crime of lesser degree is the determinative factor. . . .

For the reasons stated I no longer support the majority view which requires the court to submit second degree murder as a permissible verdict in a prosecution for premeditated first degree murder when there is no evidence to support the lesser degree.

*Id.* at 259-60, 258 S.E. 2d at 343 (citations omitted).

Although *Harris* is of recent vintage, the law is never settled until it is settled correctly.

Justice MITCHELL joins in this concurring opinion.

Justice MITCHELL concurring.

I concur in the holding of the majority and in the reasoning employed by the majority to reach that holding. I find myself unable, however, to agree with one statement of law made by the

majority, which I feel is incorrect and not necessary to the result reached.

The majority states that:

> Where the homicide is perpetrated by means of poison, lying in wait, imprisonment, starving or torture, all of which require planning or purpose, the law conclusively presumes that the murder was committed with premeditation and deliberation, and where the evidence produced at trial supports a finding that the murder was so perpetrated, a defendant can properly be convicted of first degree murder. *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Hedrick*, 232 N.C. 447, 61 S.E. 2d 349 (1950); *State v. Dunheen*, 224 N.C. 738, 32 S.E. 2d 322 (1944). *See Barfield v. Harris*, 540 F. Supp. 451, 468 (E.D.N.C. 1982).

Although the authorities cited by the majority support the quoted proposition, I believe that they were erroneous when decided or that the principle so stated was unnecessary to the decision of those cases and constitutes mere *obiter dicta* and not binding authority. When a homicide is perpetrated by means of poison, lying in wait, imprisonment, starving or torture, the law does not presume, conclusively or otherwise, that the murder was committed with premeditation and deliberation. Instead, the presence or absence of premeditation and deliberation is irrelevant. As the majority correctly points out, a defendant may be guilty of *both* murder in the first degree by one of the aforementioned methods *and* guilty of murder in the first degree by reason of premeditation and deliberation on the same set of facts. Premeditation and deliberation are not, however, elements of murder in the first degree perpetrated by means of poison, lying in wait, imprisonment, starving or torture. A conviction of murder in the first degree is appropriate in these cases if it is shown that the defendant intentionally killed the victim by such means, and nothing else need be shown.

Prior to 1893 any intentional and unlawful killing of a human being with malice aforethought constituted murder punishable by death. Since 1893, G.S. 14-17 and its predecessors have not changed the definition of murder. The statute merely divides murders into two categories for purposes of imposing punishment. Those classified as murders in the first degree remain, as at com-

mon law, punishable by death. Included among this classification are murders perpetrated by means of poison, lying in wait, imprisonment, starving or torture, and the statute does not require that these crimes be premeditated or deliberate in order to be murder in the first degree and punishable by death as at common law. See *State v. Davis*, 305 N.C. 400, 290 S.E. 2d 574 (1982), for a more complete history of the evolution of the statute and its effect on the common law.

For the foregoing reasons, I am unable to agree with or concur in the quoted statement from the majority opinion. I entirely agree with the majority, however, that the trial judge's duty to instruct on the lesser offense of murder in the second degree must be placed within the context of an evidentiary determination and that such an instruction is not required in every case in which the defendant is tried for murder in the first degree by premeditation and deliberation. With this single exception, I completely concur in Justice Meyer's correct, scholarly and well documented opinion on behalf of the majority.

Justice CARLTON dissenting.

I dissent to that portion of the majority decision which overrules *State v. Harris*, 290 N.C. 718, 228 S.E. 2d 424 (1976).

In *Harris*, this Court held that in all cases in which the State relies upon premeditation and deliberation to support a conviction of murder in the first degree, the trial court must submit to the jury an issue of murder in the second degree. *Id.* at 730, 228 S.E. 2d at 432. Writing for a unanimous Court, Justice Moore noted that this has been the rule in North Carolina since 1928 when he cited *State v. Newsome*, 195 N.C. 552, 143 S.E. 187 (1928). *State v. Harris*, 290 N.C. at 729-30, 228 S.E. 2d at 431-32. Indeed, the *Harris* opinion presents a careful analysis of the rule's origins. *Id.* at 727-30, 228 S.E. 2d at 430-32. In *State v. Keller*, 297 N.C. 674, 256 S.E. 2d 710 (1979), and *State v. Poole*, 298 N.C. 254, 258 S.E. 2d 339 (1979), this Court recently affirmed the rule. Despite all of this precedent and the sound reasoning articulated for the rule, a new majority of this Court has, on the most specious reasoning, abruptly elected to overrule *Harris*. I cannot join in this injudicious disregard for this Court's unanimous recent precedents (except for *Poole* in which Justice Huskins dissented) recognizing this sound rule of law.

In *Harris,* this Court reaffirmed the rule, articulated many years earlier, that a second-degree murder charge also must be submitted to the jury whenever the State relies on premeditation and deliberation to support a first-degree murder conviction. We stated:

> We hold, therefore, that in all cases in which the State relies upon premeditation and deliberation to support a conviction of murder in the first degree, the trial court must submit to the jury an issue of murder in the second degree. Again, we reaffirm the rule originally stated in *State v. Spivey* [151 N.C. 676, 65 S.E. 995 (1909)], that in those cases in which the State proves a murder committed by one of the means stated in G.S. 14-17, or in the perpetration or attempted perpetration of a felony, an instruction to the jury to return a verdict of murder in the first degree or not guilty is proper; provided, that there is no evidence, or an inference deducible therefrom, tending to show a lesser offense. *See State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885 (1969).

*Id.* at 730, 228 S.E. 2d at 432.

When this Court reaffirmed the rule again three years later in *State v. Keller,* 297 N.C. 674, 256 S.E. 2d 710 (1979), we explained the reason for the rule: the *jury* must be allowed to decide whether to infer that the defendant did premeditate and deliberate the killing. This Court stated:

> Ordinarily premeditation and deliberation, being operations of the mind, must always be proved, if at all, by circumstantial evidence. . . . These mental operations of defendant must be inferred, if at all, from the circumstances of the case. Perhaps the only reasonable inference which could be made here is that defendant did indeed premeditate and deliberate the killing. Nevertheless *in first degree murder cases* the jury must be left free to draw or not to draw this inference; and if the jury chooses not to draw it, it should be given the alternative of finding defendant guilty of second degree murder.

*Id.* at 677-78, 256 S.E. 2d at 713 (original emphasis).

The majority has much to say about the general rule in this jurisdiction that a lesser included offense is not required to be submitted unless there is some positive evidence to sustain it. Indeed, in *Keller* the State had specifically requested that we abandon the *Harris* rule in view of the general rule. We specifically responded to this argument: "[t]his Court has not applied this rationale in cases involving crimes other than first degree murder which have as an essential element a specific criminal intent on the part of the defendant." *State v. Keller*, 297 N.C. at 678, 256 S.E. 2d at 713 (citing *State v. Allen*, 297 N.C. 429, 255 S.E. 2d 362 (1979)—in burglary prosecution, no error in refusing to submit nonfelonious breaking and entering where State's evidence tends to establish that defendant intended to rape occupant, defendant's defense is alibi and mistaken identity, and there is no evidence of nonfelonious breaking and entering—and *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971)—in assault with intent to commit rape prosecution, no error in refusing to submit assault on a female where there was no evidence tending to show that victim was assaulted for any purpose other than rape or for no purpose at all).

In *Keller* we added: *"The first degree murder rule is, however, firmly rooted in our cases. More importantly it was carefully reconsidered, reaffirmed and applied in Harris. In keeping with that reasonable predictability rightly expected of appellate courts, it should be applied here."* 297 N.C. at 678, 256 S.E. 2d at 713 (emphasis added).

In stressing the general rule concerning submission of lesser included offenses and the necessity for what it calls an "evidentiary approach," the majority completely misses the point: The *Harris* rule, which I suggest has only been *slightly modified* by the United States Supreme Court's decision in *Hopper v. Evans*, --- U.S. ---, 102 S.Ct. 2049, 72 L.Ed. 2d 367 (1982), is, as modified, nothing more than a specific application of the very principle urged by the majority—that whenever the evidence supports a conviction of a lesser included offense, the lesser included offense must be submitted to the jury with the greater offense. The *Harris* principle requires that a second-degree murder charge be submitted in first-degree murder cases relying on the elements of premeditation and deliberation because these elements connote a state of mind described with great particularity in our homicide

law and must be proved (with one exception discussed below), if at all, by inferences arising from circumstantial evidence. This pervasive use of circumstantial evidence (and the inferences to be drawn from it) and the particular nature of the state of mind required compels the conclusion that whether the defendant premeditated and deliberated the killing is *inherently* a jury question.

Because the elements of premeditation and deliberation are essentially "operations of the mind," the only "witness" to this amorphous process — the only person with firsthand knowledge of what went on in the defendant's mind at the time of the offense — is the defendant himself. If the defendant never testifies to what his state of mind was at the time of the killing the jury faces only one question: whether to infer from the circumstantial evidence that the defendant premeditated and deliberated the killing. If it decides to infer the defendant premeditated and deliberated the killing it will find the defendant guilty of first-degree murder. If it decides not to infer the existence of premeditation and deliberation but finds that the other elements of first-degree murder were proved beyond a reasonable doubt the jury will find the defendant guilty of second-degree murder. To allow the jury to decide whether to infer the existence of premeditation and deliberation, it must have for its consideration both a first-degree and a second-degree murder charge. This is the case because a decision whether to convict of first-degree murder or second-degree murder hinges on the jury's resolution of the premeditation and deliberation elements. The determination of whether premeditation and deliberation were proved beyond a, reasonable doubt is a decision which only the jury should be allowed to make because that decision rests on an inference.

The above instance — where the defendant chooses not to testify about his state of mind — must be distinguished from the situation where the defendant's own evidence affirmatively demonstrates the existence of premeditation and deliberation. In so doing, I acknowledge that the recent United States Supreme Court decision in *Hopper v. Evans*, --- U.S. ---, 102 S.Ct. 2049, 72 L.Ed. 2d 367 (1982), tempers the rule in *Harris*. The Supreme Court held in *Hopper* that no jury instructions on lesser included offenses were required in a capital case in which the defendant's

own evidence affirmatively negated the possibility that such an instruction might have been warranted. *Id.* In *Harris* we held, "that in *all* cases in which the State relies upon premeditation and deliberation to support a conviction of murder in the first degree, the trial court must submit to the jury an issue of murder in the second degree." 290 N.C. at 730, 228 S.E. 2d at 432 (1976) (emphasis added).

I agree, therefore, in accordance with *Hopper*, that the rule in *Harris* has been modified by the United States Supreme Court to this extent: In cases in which *the defendant's own evidence affirmatively demonstrates* the defendant had the required mental state for first-degree murder—premeditation and deliberation—then an instruction on second-degree murder is improper in capital cases. In short, the Supreme Court carved out only a very narrow exception to the *Harris* rule.

In *Hopper* the United States Supreme Court was concerned that in a capital case, in which the defendant's own evidence affirmatively proved the requisite mental state, the inclusion of instructions to the jury on lesser included offenses "invited the jurors to disregard their oaths and convict a defendant of a lesser offense when the evidence warranted a conviction of first-degree murder, inevitably leading to arbitrary results." --- at ---, 102 S.Ct. at 2053, 72 L.Ed. 2d at 373 (citing *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed. 2d 974 (1976) ). On the other hand, the Supreme Court in *Hopper* also noted its decision in *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed. 2d 392 (1980). In *Beck* the Court held, "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [the state] is constitutionally prohibited from withdrawing that option from the jury in a capital case." *Id.* at 638, 100 S.Ct. at 2390, 65 L.Ed. 2d at 403.

In defining the two poles between which due process must operate with respect to the inclusion of instructions on lesser included offenses, the Supreme Court wrote:

*Beck* held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction. The jury's discretion is thus

channelled so that it may convict a defendant of any crime fairly supported by the evidence.

*Hopper v. Evans*, --- at ---, 102 S.Ct. at 2053, 72 L.Ed. 2d at 373 (original emphasis). In sum, to fail to give an instruction on a lesser included offense when the evidence or lack of evidence on a particular essential element warrants it is a violation of due process. Conversely, to give an instruction on a lesser included offense when the evidence supports *only* the greater offense also violates due process.

In *Hopper* the defendant's own testimony, his confession regarding his state of mind, constituted direct evidence of the essential mental element and at the same time affirmatively negated any claim or inference that he did not intend to kill the victim. In the case at bar, however, defendant Strickland denied he had committed the murder and did not present any evidence as to the requisite mental elements of premeditation and deliberation. The jury's duty was to determine first whether defendant had committed the killing. If it found that he had it was then to decide whether to infer that defendant had premeditated and deliberated the killing. Defendant here did not confess; he did not provide evidence to support the charge that he had premeditated and deliberated the killing nor did his evidence affirmatively demonstrate that he had the requisite state of mind. There was no evidence to preclude the jury from reasonably declining to infer that defendant had the requisite state of mind for first-degree murder. In other words, the jury reasonably could have decided that defendant strangled the victim but that he did not do so with premeditation and deliberation. Without the instruction on second-degree murder the jury was prevented from making such a determination.

The only uncontroverted evidence bearing on the requisite mental state of the person who committed the murder in the case at bar is the fact that the victim was tied to a tree and strangled. To hold, as the majority apparently does, that the mere use of such means to kill another is sufficient, *as a matter of law*, to support *only* the inference that the murderer premeditated and deliberated the killing is to judicially amend G.S. 14-17 (1981) by adding "death by strangulation" to the list of methods of murder, proof of which are alternatives to proof of premeditation and

deliberation for first-degree murder. We, of course, should not attempt to do so.

The rule in *Hopper* is only a very narrow exception to the rule in *Harris*. This conclusion that the *Harris* rule is only slightly modified is based on the language found in *Hopper* itself. First, the issue in *Hopper* was framed very narrowly, as narrowly as I believe *Harris* is now modified. In his opinion for the majority, Chief Justice Burger stated the issue as follows: "[W]hether . . . a new trial is required in a capital case in which the *defendant's own evidence negates the possibility* that such an instruction [on lesser included offenses] might have been warranted." *Hopper v. Evans*, --- at ---, 102 S.Ct. at 2050, 72 L.Ed. 2d at 369-70 (emphasis added).

In addition, the Chief Justice repeatedly emphasized the significance of the particular facts in *Hopper*, specifically, the defendant's own statements which "made it crystal clear that he had killed the victim, that he intended to kill him, and that he would do the same thing again in similar circumstances." The Court wrote:

> The uniqueness of respondent's claims has been outlined in the statement of facts, but those facts merit emphasis for they bear on the key issue of whether there was any evidentiary basis to support a conviction of a lesser included offense. From the outset, beginning with his appearance before the grand jury, respondent made it crystal clear that he had killed the victim, that he intended to kill him, and that he would do the same thing again in similar circumstances. At trial, he testified that he always tried to choose places to rob so that he could avoid killing people. However, he also testified that, if necessary, he was always prepared to kill.

*Id.* at ---, 102 S.Ct. at 2053, 72 L.Ed. 2d at 373-74.

The Court concluded:

> It would be an extraordinary perversion of the law to say that intent to kill is not established when a felon, engaged in an armed robbery, admits to shooting his victim in the back in the circumstances shown here. The evidence not only supported the claim that respondent intended to kill the victim, but *affirmatively negated* any claim that he did not

intend to kill the victim. An instruction on the offense of unintentional killing during this robbery was *therefore* not warranted.

*Id.* at ---, 102 S.Ct. at 2054, 72 L.Ed. 2d at 374 (emphasis added).

In the instant case, the State relied solely on the theory of premeditation and deliberation to support its first-degree murder charge. The trial court submitted only the issue of first-degree murder to the jury. Hence, under the long-standing rule in this jurisdiction that a second-degree murder charge also must be submitted to the jury whenever the defendant relies on premeditation and deliberation to support a first-degree murder conviction, I believe defendant is entitled to a new trial on the murder charge.

Finally, I think it particularly interesting to analyze the reasons the majority advances for overruling *Harris*. The majority states that it is "compelled" to overrule *Harris* because: (1) the *Harris* rule is not required or supported by precedent, (2) it does not manifestly improve the administration or quality of justice, (3) it has been "emasculated" by *Hopper*, and (4) it is "suspect of being constitutionally impermissible."

With respect to the first reason, if the *Harris* rule is not required or supported by precedent, then I submit the doctrine of *stare decisis* must be dead in this jurisdiction because the new Court majority simply refuses to acknowledge the clear holdings of pre-*Harris* decisions of this Court. For example, the majority conveniently quoted only the following language from a *concurring* opinion in *State v. Newsome*, 195 N.C. 552, 143 S.E. 187 (1928), to support its position:

> When on the trial of a criminal prosecution it is permissible under the bill, as here, to convict the defendant of 'a less degree of the same crime' (C.S., 4640), and *there is evidence tending to support a milder verdict,* the case presents a situation where the defendant is entitled to have the different views presented to the jury, under a proper charge,
> . . . .

The *entire* paragraph, which reads as follows, does not support its position, however:

When on the trial of a criminal prosecution it is permissible under the bill, as here, to convict the defendant of "a less degree of the same crime" (C.S., 4640), and there is evidence tending to support a milder verdict, the case presents a situation where the defendant is entitled to have the different views presented to the jury, under a proper charge, *and an error in this respect is not cured by a verdict convicting the defendant of the highest offense charged in the bill of indictment, for in such event it cannot be known whether the jury would have convicted of a less degree of the same crime if the different views, arising on the evidence, had been correctly presented to them by the trial court.* S. v. Holt, 192 N.C., 490, 135 S.E., 324; *S. v. Kline,* 190 N.C., 177, 129 S.E., 417; *S. v. Lutterloh,* 188 N.C., 412, 124 S.E., 752; *S. v. Allen,* 186 N.C., 302, 119 S.E., 504; *S. v. Williams,* 185 N.C., 685, 116 S.E., 736; *S. v. Merrick,* 171 N.C., 788, 88 S.E., 501; *S. v. Kennedy,* 169 N.C., 288, 84 S.E., 515; *S. v. Kendall,* 143 N.C., 659, 57 S.E., 340; *S. v. White,* 138 N.C., 704, 51 S.E., 44; *S. v. Foster,* 130 N.C., 666, 41 S.E., 284; *S. v. Jones,* 79 N.C., 630.

*State v. Newsome,* 195 N.C. at 566-67, 143 S.E. at 194-95 (Stacy, C. J., concurring in result)(emphasis added).

The majority appears to believe the phrase "there is evidence tending to support a milder verdict" supportive of its position. This is not the case, however. The import of the *Newsome* decision is that in a first-degree murder case relying on premeditation and deliberation to support the charge there is *always* evidence tending to support a milder verdict, that is, a second-degree murder verdict. I will quote the facts, the trial court's charge to the jury and the holding in *Newsome* to demonstrate the precedential value of *Newsome* and the extent to which it supports the *Harris* rule.

The pertinent facts in *Newsome* are as follows:

There was evidence tending to show that defendant was at his home, when deceased and Cora Reid passed the same, going to the home of the latter, walking together along the path, and that defendant saw them as they passed. He knew that deceased would later return to her father's home, by this path, alone. There was evidence tending to show further that defendant waylaid the deceased as she was returning

from the home of Cora Reid to the home of her father, about 6:30 o'clock, and that he killed her by cutting her throat with a knife.

There was also evidence tending to show that defendant met the deceased, as she was returning from the home of Cora Reid to her father's home, near defendant's home, and that he then and there assaulted her, with intent to commit rape upon her. This assault, made about 125 to 140 yards from the place at which the body of the deceased was found, was not successful. The deceased broke away from defendant and ran toward her father's home. There was evidence tending to show that defendant pursued her with intent to commit rape upon her, and that he overtook her; that defendant killed her by cutting her throat with a knife, while attempting to perpetrate upon her the crime of rape.

There was evidence tending to show further that when defendant failed in his attempt to commit rape upon the deceased, at the time of his first assault upon her, because of her successful resistance, he abandoned his purpose to rape her, and that deceased escaped and ran from him; that as she was running toward the home of her father, she called to defendant, saying that she would tell her father of defendant's assault upon her, as soon as she arrived at his home; that defendant then pursued her a distance of 125 to 140 yards from the place where he first assaulted her, overtook her and again assaulted her with a knife with no intent to rape her, but with intent to prevent her from telling her father of the previous assault with intent to commit rape; that while making this latter assault upon deceased, defendant cut her throat with a knife, thus causing her death.

*Id.* at 554, 143 S.E. at 188.

The trial court's charge to the jury was as follows:

"I charge you that if you are satisfied from this evidence, and find beyond a reasonable doubt, that is, to a moral certainty, that the defendant killed Beulah Tedder, while lying in wait, or that he killed her while attempting to commit rape upon her person, or if not in either of these instances, that he killed her after premeditation and delibera-

State v. Strickland

tion, as I have defined those terms to you, it would be your duty to return a verdict of guilty of murder in the first degree; but if you are not so satisfied, it would be your duty to return a verdict of not guilty."

"In this case I do not see and cannot arrive at any conclusion that would lead me to leave with you the question of his guilt upon charge of second degree murder or manslaughter; I therefore charge you that you can return but one of two verdicts in this case — either murder in the first degree, or not guilty."

*Id.* at 560-61, 143 S.E. 191-92.

The holding in *Newsome* was as follows:

When, however, the state relies upon evidence tending to show, not only that the murder was perpetrated by one of the means specified in the statute, or that it was committed in the perpetration of or attempt to perpetrate a felony as defined in the statute, but also upon evidence tending to show deliberation and premeditation, the jury should be instructed that, if they fail to find from the evidence, beyond a reasonable doubt, that the murder was perpetrated by one of the means specified in the statute, or that it was committed in the perpetration of, or attempt to perpetrate, a felony, and further fail to find from the evidence, beyond a reasonable doubt, that it was committed after deliberation and premeditation, they should return a verdict of guilty of murder in the second degree, provided, of course, they shall find from the evidence, beyond a reasonable doubt, that the defendant committed the murder. Deliberation and premeditation, if relied upon by the state, as constituting the homicide murder in the first degree, under the statute, must always be proved by the evidence, beyond a reasonable doubt. In such case, under the statute as construed by this court, it is for the jury and not the judge to find the fact of deliberation and premeditation from the evidence, and beyond a reasonable doubt. Premeditation and deliberation are always matters of fact to be determined by the jury, and not matters of law to be determined by the judge.

. . . .

It cannot be held as a matter of law that all the evidence in this case, and every inference fairly and reasonably to be drawn therefrom, required the jury to return a verdict of "Guilty of murder in the first degree," or of "Not guilty." A verdict of "Guilty of murder in the second degree" could have been returned by the jury under the law and the evidence in this case.

*Id.* at 564, 143 S.E. 193.

Similarly, the majority finds this language in *State v. Perry,* 209 N.C. 604, 184 S.E. 545 (1936), particularly persuasive: "Whenever there is any evidence or when any inference can be fairly deduced therefrom tending to show a lower grade of murder, it is the duty of the trial judge, under appropriate instructions, to submit that view to the jury." *Id.* at 606, 184 S.E. at 546. The majority uses this language to reach its conclusion that *Harris* "appeared to convert a rule requiring the presence of evidence into a more inflexible rule *requiring* as a matter of law a second degree murder instruction *in every case* in which the State relied on premeditation and deliberation." In so doing, the majority fails to read the language of the *Perry* opinion in context, that is, in light of the facts and holding in the case. The language in *Perry* the majority quotes, language similar to that which it lifts from the concurring opinion in *Newsome,* stands for the proposition that there is *always* evidence of a lower grade of murder in first-degree murder cases relying on premeditation and deliberation to support a murder conviction. The Court in *Perry* wrote:

The State offered evidence to the effect that the defendant made a confession in which he stated that he was with Joseph Terry late at night, and that Joseph Terry went into his house, out of sight of the defendant, and fired the fatal shot that killed the deceased. The State also offered in evidence the testimony of Joseph Terry to the effect that he and the defendant were out together at night and that the defendant told him (witness) that he (defendant) had shot and killed the deceased during an interval when they were separated. No eye-witness to the homicide was introduced. The evidence as to how the actual killing was accomplished is *entirely circumstantial.* While there was evidence of threats

and of motive and of other facts and circumstances amply sufficient to take the case to the jury upon the issue of murder in the first degree, there was no evidence that the crime was committed by any of the means specifically mentioned in the statute defining the two degrees of murder or in the perpetration or attempt to perpetrate a felony, as delineated in C. S., 4200.

The defendant offered no evidence.

The court charge [sic] the jury to return a verdict of guilty of murder in the first degree or not guilty.

It is only in cases where all the evidence tends to show that the homicide was committed by means of poison, lying in wait, imprisonment, starving, torture, or in the perpetration or attempt to perpetrate a felony, that the trial judge can instruct the jury that they must return a verdict of murder in the first degree or not guilty. In those cases where the evidence establishes that the killing was with a deadly weapon the presumption goes no further than that the homicide was murder in the second degree, and if the State seeks a conviction of murder in the first degree it has the burden of proving beyond a reasonable doubt that the homicide was committed with deliberation and premeditation. Under such circumstances it is error for the trial judge to fail to submit to the jury the theory of murder in the second degree, since it is the province of the jury to determine if the homicide be murder in the first or in the second degree, that is, whether they, the jury, are satisfied beyond a reasonable doubt, from the evidence, that the homicide was committed with deliberation and premeditation. Whenever there is any evidence or when any inference can be fairly deduced therefrom tending to show a lower grade of murder, it is the duty of the trial judge, under appropriate instructions, to submit that view to the jury. The defendant is entitled to have the jury instructed to the effect that if they should find beyond a reasonable doubt that he committed the murder, and should fail to find beyond a reasonable doubt that such murder was committed with deliberation and premeditation, they should return a verdict of guilty of murder in the second degree. *S. v. Spivey*, 151 N.C., 676; *S. v. Newsome*, 195 N.C., 552.

Under the authorities cited, we hold that the failure to submit to the jury the theory of murder in the second degree entitles the defendant to a new trial, and it is so ordered.

*State v. Perry*, 209 N.C. at 605-06, 184 S.E. at 546.

The majority relies heavily on its interpretation of various bits of language in our pre-*Harris* decisions. It simply fails to acknowledge that *Newsome* and *Perry*, on their facts, are clear *holdings* supporting the *Harris* rule.

The majority does not explain its second reason—that the *Harris* rule does not manifestly improve the administration or quality of justice—and I can think of no reason to support such a statement. Indeed, the majority's opinion in this case serves only to confuse what was once a settled area of the law. Under this Court's decision today, the trial judges of this State no longer have any guidance whatsoever in determining when a second-degree murder charge is to be submitted to the jury. If the majority believes that its decision in this case will help get heinous murderers off the streets and into prison, then I fear it will be terribly disappointed. The majority's decision may require that a jury permit a killer to go free because it was unwilling to find that he premeditated and deliberated the killing although it would have found him guilty of second-degree murder had it been given the opportunity to do so. The majority's statement that the decision in *Hopper* "emasculated" the *Harris* rule is simply a gross exaggeration. If *Hopper* really did "emasculate" the *Harris* rule, rather than merely create a narrow exception to it, then the majority should simply announce that the United States Supreme Court had overruled *Harris;* it would have been unnecessary for the majority to then present page after page of strained reasoning to justify its holding. Finally, if the majority believes that *Harris* is "constitutionally impermissible" it ought to so hold.

The decision which the majority reaches today is, in my opinion, an extremely unfortunate one. I vote to give defendant a new trial on the murder charge for failure of the trial court to submit to the jury the alternative verdict of guilty of second-degree murder.

Chief Justice BRANCH joins in this dissenting opinion.

Justice EXUM dissenting.

I agree thoroughly with the position taken by Justice Carlton and join in his dissent. I write separately simply to say that this Court, having so recently decided *Harris* and even more recently reaffirmed *Harris* in *Keller* and *State v. Poole*, 298 N.C. 254, 258 S.E. 2d 339 (1979), has an obligation to treat Harris, Keller, Poole and Strickland, the defendant here, equally. Under these circumstances, if relief from the *Harris* rule is going to come at all, it should come from the legislature so that any statute overruling *Harris* would apply, prospectively only, to all criminal defendants alike. I therefore dissent for this additional reason.